Argued and submitted June 23, affirmed December 15, 1980

## STATE OF OREGON,
### *Respondent,*
#### *v.*
## THOMAS THEODORE CORPUZ,
### *Appellant.*

(No. CR 79-113, CR 79-117, CR 79-118,
CR 79-119 and, CR 79-120, CA 16456)

621 P2d 604

Marilyn C. McManus, Deputy Public Defender, Salem, argued the cause for appellant. On the brief were Gary D. Babcock, Public Defender, and James E. Mountain, Jr., Deputy Public Defender, Salem.

Rudy S. Westerband, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

## WARDEN, J.

Defendant appeals his conviction for manslaughter in the second degree, ORS 163.125(1)(a),[1] assault in the second degree, ORS 163.175(1)(c),[2] failure to perform the duties of a driver involved in an injury accident, ORS 483.602,[3] (hit and run), and driving under the influence of intoxicants, ORS 487.540,[4] (DUII). The defendant was

---

[1] ORS 163.125(1)(a), provides:

"(1) Criminal homicide constitutes manslaughter in the second degree when:

"(a) It is committed recklessly; * * * "

[2] ORS 163.175(1)(c) provides:

"(1) A person commits the crime of assault in the second degree if he:

" * * * * *

"(c) Recklessly causes serious physical injury to another by means of a deadly or dangerous weapon under circumstances manifesting extreme indifference to the value of human life."

[3] ORS 483.602 provides:

"(1) The driver of any vehicle involved in an accident which results in injury or death to any person or causes damage to a vehicle which is driven or attended by any person, immediately shall stop such vehicle at the scene of the accident, or as close thereto as possible, and shall remain at the scene of the accident until he has fulfilled the requirements of subsection (2) of this section. Every such stop shall be made without obstructing traffic more than is necessary.

"(2) The drivers of any vehicles involved in any accident resulting in injury or death to any person or damage to any such vehicles shall:

"(a) Give to the other driver or surviving passenger, or any person not a passenger injured as a result of such accident, his name, address and the registration number of the vehicle which he is driving, and the name and address of any other occupants of such vehicle.

"(b) Upon request and if available, exhibit and give the number of his operator's or chauffeur's license to the persons injured, or to the occupant of or person attending any vehicle damaged.

"(c) Render to any person injured in such accident reasonable assistance, including the conveying of such person to a physician, surgeon or hospital for medical or surgical treatment, if it is apparent that such treatment is necessary or if such conveying is requested by any injured person.

" * * * * * "

[4] Former ORS 487.540, under which defendant was convicted, provided:

"(1) A person commits the offense of driving while under the influence of intoxicants if he drives a vehicle while:

sentenced to a five-year term of imprisonment on the manslaughter conviction to be served concurrently with a two-year sentence on the assault conviction and a one-year sentence on the hit and run conviction.[5]

On the evening of July 6, 1979, defendant and his cousin were drinking and became intoxicated. Later that night, the car which defendant and his cousin had been seen using that evening collided with a motorcycle, severely injuring the driver of the motorcycle and killing the passenger. Two persons were observed fleeing from the collision scene without rendering assistance to the injured persons or identifying themselves.

Defendant raises a multitude of issues on appeal. We group them into six major contentions. First, he contends that there was insufficient evidence as a matter of law to prove that he was the driver of the car that crashed into the motorcycle, and, therefore, his conviction for all charges should be reversed. Second, defendant contends that even if there was sufficient evidence that he was the driver, a vehicular homicide committed while under the influence of intoxicants is punishable only as criminally negligent homicide and not as manslaughter caused by reckless conduct. Third, as a corollary to this point, defendant contends that the trial court's jury instruction based on ORS 161.125 concerning voluntary intoxication and recklessness was improper and a prejudicial comment on the evidence.[6] Fourth, defendant challenges the second degree

"(a) He has .10 percent or more by weight of alcohol in his blood as shown by chemical analysis of his breath, blood, urine or saliva made under ORS 487.805 to 487.815 and 487.825 to 487.835; or

"(b) He is under the influence of intoxicating liquor, a dangerous drug or narcotic drug; or

"(c) He is under the influence of intoxicating liquor and a dangerous drug or narcotic drug.

" * * * * * "

[5] Defendant was also fined $500 on the hit and run conviction and $500 on the DUII conviction.

[6] Former ORS 161.125(2), in effect at the time of defendant's trial, provided:

"(2) When recklessness establishes an element of the offense, if the defendant, due to drug use, dependence on drugs or voluntary intoxication, is

assault statute, ORS 163.175(1)(c), as void for vagueness; alternatively, he contends that even if the statute is not void, there was insufficient evidence as a matter of law that a dangerous weapon was used. Fifth, defendant attacks his conviction for hit and run, arguing that the trial court's instruction was incorrect concerning the element of knowledge. Lastly, defendant contends that in the event all of his convictions survive appellate scrutiny, the DUII, assault, and manslaughter charges should have been merged for conviction and sentencing by the trial court. We affirm.

■ Defendant relies for his first contention on *Jackson v. Virginia,* 443 US 307, 99 S Ct 2781, 61 L Ed 2d 560 (1979), *State v. Harris,* 288 Or 703, 609 P2d 798 (1980), and *State v. Krummacher,* 269 Or 125, 523 P2d 1009 (1974), claiming that even after viewing all of the evidence in the light most favorable to the state, no rational trier of fact could have found beyond a reasonable doubt that defendant was the driver of the vehicle. While the defendant is correct that the test is not whether any evidence exists, but whether there is enough to justify a rational trier of fact in finding guilt beyond a reasonable doubt, we conclude that there is sufficient evidence in this case.

The facts supporting this conclusion are as follows: The car that collided with the victims was owned by defendant; defendant was seen driving the car shortly before the accident by a police officer; defendant's cousin, who was in defendant's car at the time of the accident, testified that defendant was driving the car at the time of the accident.

The facts on which defendant relies in contesting this conclusion are: At the time of his arrest defendant denied being near the car all night; the charges against defendant's cousin were dismissed after he agreed to testify against defendant; and defendant's cousin admitted lying about certain other matters. These facts put the credibility of his cousin in issue.

unaware of a risk of which he would have been aware had he been not intoxicated, not using drugs, or not drug dependent, such unawareness is immaterial."

The jury decided the credibility issue against defendant. As we stated in *State v. Harris,* 288 Or at 723, citing *State v. Krummacher,* 269 Or at 137-38:

"* * *After the conflicts have been so decided, we take such decided facts together with those facts about which there is no conflict and determine whether the inferences that may be drawn from them are sufficient to allow the jury to find defendant's guilt beyond a reasonable doubt."

Here, there was sufficient evidence to establish beyond a reasonable doubt that defendant was the driver of the car.

Secondly, defendant contends that vehicular homicide is punishable only as criminally negligent homicide under ORS 163.145[7] and not as recklessly caused manslaughter under ORS 163.125(1)(a). ORS 163.125(1)(a), the second degree manslaughter statute, and ORS 163.145(1), the negligent homicide statute, focus on the amount of caution and circumspection exercised in light of the risk of death involved, differentiating between kinds of culpability involving different degrees of caution, circumspection and risk. The states of mental culpability are described as "recklessly," and "with criminal negligence." The mental state of "recklessness" is defined in ORS 161.085(9) as meaning:

"* * * that a person *is aware of and consciously disregards* a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." (Emphasis added.)

ORS 161.085(10) defines criminal negligence to mean

" * * * that a person *fails to be aware of* a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." (Emphasis added.)

The difference between recklessness and criminal negli-

---

[7] ORS 163.145(1) provides:

"(1) A person commits the crime of criminally negligent homicide when, with criminal negligence, he causes the death of another person."

gence, then, is the element of advertence or inadvertence. Advertence renders conduct reckless; inadvertence renders it criminally negligent. Criminal Law Revision Commission, Proposed Oregon Criminal Code, 91, Commentary, § 91 (1970).

■     In discussing voluntary intoxication's impact on one's mental state, ORS 161.125(2), the Proposed Oregon Criminal Code, 9, Commentary, § 11 (1970), cites a drunk driving homicide as illustrative of "reckless" behavior. The Commentary arrives at this conclusion by exploring the perpetrator's awareness of a substantial risk. It quotes the Practice Commentaries by Hechtman following NY Penal Law § 15.05 (McKinney 1965) as follows:

> "[T]he driver of a car * * * at a bar, drinks heavily, continues on his way and then runs over a pedestrian whom he fails to see in his intoxicated condition and whom he undoubtedly would have seen had he been sober. Here, his culpability goes well beyond his failure of perception at the time of the accident. By getting drunk in the course of his automobile trip, he consciously disregarded a substantial and unjustifiable risk of accident and, hence, in the overall setting, he acted 'recklessly.' "

We conclude that a vehicular homicide involving intoxication is punishable as manslaughter.[8]

■■     Having determined that criminal negligence is not the sole mental state applicable to a vehicular homicide, we find defendant's third contention, i.e., that a jury instruction concerning recklessness of an intoxicated person is improper, to be without merit. Also, since there was an abundance of evidence of defendant's voluntary intoxication, an instruction based on ORS 161.125 as to the legal effect of this intoxication on defendant's mental state was a proper instruction and did not constitute a comment on the evidence. In the absence of such an instruction the jurors might well have inferred from the evidence of defendant's voluntary intoxication that defendant was incapable of having a reckless state of mind. That would have been an unwarranted conclusion. An instruction indicating the

---

[8] Other statutes that appear to recognize that a vehicular homicide could be manslaughter are: ORS 486.211 (license suspension), ORS 482.230 (mandatory revocation), ORS 484.705(1)(a) (habitual offender status), ORS 487.560(6)(a) (enhanced penalty for driving while suspended).

immateriality of voluntary intoxication is not an inappropriate comment on the evidence if, as here, the evidence would likely lead the jury to an erroneous conclusion. *See State v. McCormick,* 28 Or App 821, 827, *reversed on other grounds,* 280 Or 417, 420, 571 P2d 499 (1977).

Defendant's fourth contention is that the language of ORS 163.175(1)(c), "under circumstances manifesting extreme indifference to the value of human life," is unconstitutionally vague, violating due process and *ex post facto* principles.[9] In *State v. Williams,* 37 Or App 419, 422, 587 P2d 1049 (1978), this court stated qualifications to due process restraints on statutory language:

> "* * * The standard need not be so exact that persons affected by it will never be required to hazard their freedom upon a correct assessment of the manner in which a jury will resolve a question of degree."

The Supreme Court stated in regard to Art. I, § 21 of the Oregon Constitution, the *ex post facto* provision, that " * * * A vague statute lends itself to an unconstitutional delegation of legislative power to the judge and jury, and, by permitting the jury to decide what the law will be, it offends the principle, if not the rule, against *ex post facto* laws." *State v. Blair,* 287 Or 519, 523, 601 P2d 766 (1979). The test, therefore, is whether the statute provides sufficient standards so that a determination of guilt is neither ad hoc nor unguided by the legislature.

■ The language employed in ORS 163.175(1)(c) is not of the dragnet or catchall variety which is prohibited. *See State v. Sanderson,* 33 Or App 173, 178, 575 P2d 1025 (1978). Rather, it introduces a differentiating factor, allowing enhanced punishment for only a particular kind of recklessness. Furthermore, the language employs words of common use within ordinary powers of comprehension.

---

[9] Defendant demurred to the indictment on the ground that the statute was unconstitutionally vague and renewed this contention in his motion for acquittal. On appeal defendant directs us to the Oregon Constitution, Article I, Section 11, and the due process clause of the Fourteenth Amendment of the United States Constitution as authority for his contention that the statute violates the due process and ex post facto principles. Defendant also raises statutory bases for his contention of vagueness. We decline to review the latter issues based on defendant's statutory authority as the trial court was not presented with these. *State v. Applegate,* 39 Or App 17, 20, 591 P2d 371 (1979).

"Extreme indifference to the value of human life" simply means a state of mind where an individual cares little about the risk of death of a human being. The fact that the jury determines the issue of culpability as a finding of fact does not make the statute void for vagueness. Several statutes allocating a similar role to the jury have withstood the vagueness test. *See State v. Popiel,* 216 Or 140, 147, 337 P2d 303 (1959)(assault "by means of force likely to produce great bodily injury"); *City of Portland v. Kreutz,* 7 Or App 618, 492 P2d 824 (1972)(operation of a vehicle "in a careless manner"); *State of Oregon v. Wojahn,* 204 Or 84, 137, 282 P2d 675 (1955)(driving a motor vehicle "in a negligent manner"); *State v. Samter,* 4 Or App 349, 352, 479 P2d 237 (1971)("cruelly mistreat and maltreat" a child). We conclude that the language employed in ORS 163.175(1)(c) is not void for vagueness as the language provides a sufficient standard for the determination of guilt by the jury.

Alternatively to his "vagueness" contention defendant claims that the trial court erred in submitting the second degree assault charge to the jury as there was no evidence that a dangerous weapon was used during the assault. He did not raise this issue in the trial court. We decline, therefore, to address it. *State v. Applegate,* 39 Or App 17, 20, 591 P2d 371 (1979).

Defendant's fifth contention challenges the following instruction given by the trial court regarding the hit-and-run charge:

> " * * * The state must prove * * * that the defendant was knowingly the driver of a vehicle involved in an accident which resulted in injury or death to any person * * * 'knowingly' means that the driver of the vehicle involved knew that an accident resulted in injury to or death of a person or knew that it was of such a nature that it was probable that it resulted in injury or death to a person."

Defendant contends that the knowledge required must be actual knowledge that the accident had caused physical injury, and that knowledge that it was only probable that injury resulted is insufficient.

Knowledge of an injury is not an expressed statutory element of the charge, and the issue of its being implicitly required has not been determined previously. *See State v.*

*Hulsey,* 3 Or App 64, 66, 471 P2d 812 (1970); *State v. Reynolds,* 229 Or 167, 366 P2d 524 (1961). Nevertheless, the majority of courts have held that hit and run statutes implicitly require knowledge. Annot., 23 ALR 3d 500 (1979). There is a split of authority as to whether knowledge of the injury or damage must be shown or just knowledge of the collision. In those jurisdictions where knowledge of the injury or damage must be shown, knowledge can be inferred from the circumstances. Hence, as the cited annotation states, "As a practical matter then, the rule requiring a finding of such knowledge (of injury or death) from knowledge of the accident, may operate much the same * * * as the rule requiring only knowledge of the accident or collision." 23 ALR 3d at 504. Defendant's contention that knowledge of injury or death cannot be inferred circumstantially is not supported by either of the prevailing rules.

■ The purpose of ORS 483.602 as stated in *State v. Burris,* 10 Or App 297, 500 P2d 265 (1972), quoting *State v. Hulsey,* 3 Or App at 71, is as follows:

"The essence of the statute is to maximize protection of one injured in an accident, and thus to require the operator involved to remain at the scene * * * ." 10 Or App at 300.

The burden is on the driver involved in an accident to stay at the scene and verify that no one was hurt or in need of assistance or to risk severe penalty. We decline to put the burden on the state to prove that a driver knew another person was injured. The state need only prove that defendant knew, or prove circumstances from which it can be inferred that he knew, he was involved in an accident which was likely to have resulted in injury or death to another person. The instruction given was proper.

■ In defendant's sixth contention, he argues that the DUII, assault and manslaughter charges should have been merged[10] to permit but one penalty for a single offense. Defendant did not raise this issue below. Therefore, we will only consider it on appeal if the error is egregious according to the criteria set out in *State v. Applegate,* 39 Or App at 23. In *Applegate,* this court stated at page 25:

---

[10] The two felony hit and run charges were merged for purposes of conviction and sentencing.

> " * * * [I]n considering the egregiousness of an alleged merger error, some of the factors to be considered are concurrent versus consecutive sentences and the closeness of the question * * * ."

The trial court sentenced defendant to concurrent sentences, rather than consecutive sentences, on his convictions. This factor weighs against finding that the error was egregious. *State v. Applegate,* 39 Or App at 23. Also, the failure to merge the DUII, manslaughter and assault convictions is not an obvious error. Defendant cites no cases and we have found none where the issue of merger has been determined involving these crimes. It not being egregious error, we decline to review the merger issue.

Affirmed.