Argued and submitted November 1, 1982, affirmed March 29, petition for rehearing denied May 3, 1983

STATE OF OREGON,
*Respondent on Review,*

*v.*

TIMOTHY PAUL BOONE,
*Petitioner on Review.*

(TC 81-1639, CA A23428, SC 28851)

661 P2d 917

Ronald K. Cox, Assistant Public Defender, Coquille, argued the cause and filed the brief for petitioner on review.

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

ROBERTS, J.

## ROBERTS, J.

The crime of assault in the second degree is committed by a person who "recklessly causes serious physical injury to another by means of a deadly or dangerous weapon under circumstances manifesting extreme indifference to the value of human life." ORS 163.175(1)(c).[1] The crime of assault in the third degree is committed by one who "recklessly causes serious physical injury to another by means of a deadly or dangerous weapon." ORS 163.165(1)(a).[2] Thus, second degree assault under ORS 163.175(1)(c) requires proof of the additional element of "circumstances manifesting extreme indifference to the value of human life."[3]

A jury convicted defendant of assault in the second degree as the result of an automobile accident which occurred when he drove his vehicle over the center line of a public highway.[4] Defendant was also convicted of driving

---

[1] ORS 163.175 provides:

"(1) A person commits the crime of assault in the second degree if he:

"(a) Intentionally or knowingly causes serious physical injury to another; or

"(b) Intentionally or knowingly causes physical injury to another by means of a deadly or dangerous weapon; or

"(c) Recklessly causes serious physical injury to another by means of a deadly or dangerous weapon under circumstances manifesting extreme indifference to the value of human life.

"(2) Assault in the second degree is a Class B felony."

[2] ORS 163.165 provides:

"(1) A person commits the crime of assault in the third degree if he:

"(a) Recklessly causes serious physical injury to another by means of a deadly or dangerous weapon;

"(b) Recklessly causes serious physical injury to another under circumstances manifesting extreme indifference to the value of human life; or

"(c) Recklessly causes physical injury to another by means of a deadly or dangerous weapon under circumstances manifesting extreme indifference to the value of human life.

"(2) Assault in the third degree is a Class C felony."

[3] The same language is also employed in ORS 163.118(1)(a) which describes manslaughter in the first degree.

[4] The jury was given the opportunity to convict defendant of third degree assault, which requires recklessness, or second degree assault.

under the influence of intoxicants and driving while his license was suspended. Defendant argues that his conduct is nothing more than reckless. He maintains in this appeal that his motion for a directed verdict on the second degree assault charge should have been granted because these facts do not establish the additional element of "circumstances manifesting extreme indifference to the value of human life."[5]

We have never construed this language and note that the Court of Appeals has rarely interpreted the provision. In *State v. Corpuz,* 49 Or App 811, 819, 621 P2d 604 (1980), the court, in rejecting a vagueness challenge to the language at issue here, stated, " '[e]xtreme indifference to the value of human life' simply means a state of mind where an individual cares little about the risk of death of a human being." In that case the defendant, driving under the influence of alcohol, collided with a motorcycle, injuring the driver and killing the passenger. His conviction for assault in the second degree was upheld.[6]

■ ■ The Oregon Criminal Code defines four culpable mental states: intentional, knowing, reckless and criminally negligent. ORS 161.085(7)-(10).[7] These statutes define

---

[5] There is no dispute that serious injury occurred and defendant does not argue the question of whether his automobile, as used, was a dangerous weapon. This court has not decided whether an automobile may be a dangerous weapon when it is not used as such and we do not decide it now. The only issue in this case is the meaning of the quoted language of the statute.

[6] The defendant was convicted under ORS 163.175(1)(c), the subsection at issue in this case. He was also convicted of manslaughter in the second degree, driving under the influence of intoxicants, and failure to perform the duties of a driver.

[7] ORS 161.085 defines the four culpable mental states as follows:

"(7) 'Intentionally' or 'with intent,' when used with respect to a result or to conduct described by a statute defining an offense, means that a person acts with a conscious objective to cause the result or to engage in the conduct so described.

"(8) 'Knowingly' or 'with knowledge,' when used with respect to conduct or to a circumstance described by a statute defining an offense, means that a person acts with an awareness that his conduct is of a nature so described or that a circumstance so described exists.

"(9) 'Recklessly,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and

neither extreme indifference to the value of human life nor the circumstances which may manifest such indifference. In the absence of a definition we determine the extreme indifference language does not create an additional culpable mental state. The language does, however, require more than recklessness. We conclude that the jury must find not only recklessness but also conduct which in addition to recklessness, manifests extreme indifference to the value of human life on the part of this defendant, as may be inferred from his conduct at the time of the event.[8]

■    During the 1971 amendments to the criminal code the assault statutes were extensively revised. The code recognizes three factors which aggravate the crime of assault and enhance sentences: the severity of injury, the use of a deadly or dangerous weapon, and culpable mental state. Arthur, *Homicide, Assault, Kidnapping and Related Offenses,* 51 Or L Rev 459, 482 (1972). Felony assault is divided into three degrees depending on the presence or absence of these aggravating factors. For example, one may be convicted of assault in the first degree, a class A felony,[9] when the most severe form of each criterion is present: serious physical injury, committed with a deadly or dangerous weapon and undertaken intentionally, the highest culpable mental state, ORS 161.085(7). The second and third degree assault classifications represent the legislature's attempt to balance the severity of a sentence with criminal conduct when one or more of the aggravating criteria is not present.

---

degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

"(10) 'Criminal negligence' or 'criminally negligent,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person fails to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

[8] The statute as drafted does not accurately state what we perceive to be its meaning. It is not the "circumstances" that manifest extreme indifference but rather it is the conduct of a defendant that manifests his or her extreme indifference. Whether a defendant's conduct manifests extreme indifference must be determined from all the circumstances surrounding the conduct.

[9] The maximum sentence for a class A felony is 20 years. ORS 161.605(1).

The statutes provide that assault in the third degree, a class C felony,[10] may be committed recklessly, if a deadly or dangerous weapon and serious physical injury are involved, or recklessly under circumstances manifesting extreme indifference to the value of human life if the injury is not serious or a deadly or dangerous weapon is not used. Assault in the second degree, a class B felony,[11] may occur if one either causes serious physical injury or uses a deadly or dangerous weapon if acting intentionally or knowingly. Second degree assault also occurs where both serious injury and a deadly or dangerous weapon are present and one acts recklessly under circumstances manifesting extreme indifference to the value of human life.

It is apparent from the foregoing that the language at issue contemplates circumstances which make defendant more blameworthy than recklessness alone. Defendant's situation illustrates the point. He argues that he could have been charged with reckless assault in the third degree, ORS 163.165(1)(a), but could be charged with second degree assault for action undertaken recklessly only if committed with the requisite indifference, ORS 163.175(1)(c). Defendant was convicted of assault in the second degree and sentenced to the maximum ten year term. Increased blameworthiness is the only thing which could justify the additional five year maximum sentence between second and third degree assault.[12]

The language "circumstances manifesting extreme indifference to the value of human life" was introduced into our criminal code as a result of amendments in 1971. It appeared in both the assault and criminal homicide statutes. Murder included intentional killing, felony murder and any criminal homicide "committed recklessly under circumstances manifesting extreme indifference to the value of human life." Ch 743, § 88, Or Laws 1971.[13] The

---

[10] The maximum sentence for a class C felony is 5 years. ORS 161.605(3).

[11] The maximum sentence for a class B felony is 10 years. ORS 161.605(2).

[12] The analysis applies with equal force to the difference of ten years in the maximum sentences allowed in first and second degree manslaughter, ORS 163.118(1)(a) and 163.125(1)(a).

[13] In 1975 this category of murder was reclassified as manslaughter in the first degree, its current designation. Ch 577, § 2, Or Laws 1975.

Commentary to the Proposed Oregon Criminal Code 1970 § 88 explains that this third definition of murder was intended to replace former ORS 163.020 which defined second degree murder as a killing by an act "imminently dangerous to others, and evincing a depraved mind, regardless of human life, although without any design to effect the death of any particular individual." The Commentary to the Model Penal Code indicates that the "extreme indifference" language was intended to include "within the murder category cases of homicide caused by extreme recklessness." Commentary to Model Penal Code, Tentative Draft #9, 29-30, May 8, 1959.

The terms "depraved mind" and "implied malice" are of historical significance because, as in Oregon, they were often forerunners of the modern term "extreme indifference." A wide variety of examples of the depraved mind appear in the caselaw. They include firing a rifle from across the street into the victim's living room, *State v. Gill,* 3 Or App 488, 474 P2d 23 (1970); pointing a revolver loaded with a single cartridge at the victim and firing it on the third pull of the trigger during a game of Russian roulette, *Commonwealth v. Malone,* 354 Pa 180, 47 A2d 445 (1946); intending to shoot over the victim's head to scare him and hitting by mistake, *Myrick v. State,* 199 Ga 244, 34 SE2d 36 (1945); setting off an explosion beneath a house, *Gallant v. State,* 52 So 739, 167 Ala 60 (1910); placing obstacles on a railroad track, *Presley v. State,* 59 Ala 98 (1877).

Other cases have inferred implied malice, often defined as depravity of mind and reckless and wanton disregard of human life, from the act of driving while intoxicated which causes death. *Jolly v. State,* 395 So2d 1135 (Ala Cr App 1981); *Hamilton v. Commonwealth,* 560 SW2d 539 (Ky 1978); *Commonwealth v. Taylor,* 461 Pa 557, 337 A2d 545 (1975); *Edwards v. State,* 202 Tenn 393, 304 SW2d 500 (1957); *Cockrell v. State,* 135 Tex Crim 218, 117 SW2d 1105 (1938); *State v. Trott,* 190 NC 674, 130 SE 627 (1925). These cases share many facts in common. While driving under the influence of intoxicants, the defendants drove erratically — speeding, swerving, running red lights, driving on the wrong side of the road. Such erratic driving, coupled with impairment of driving ability caused by intoxication, sufficed to indicate the implied malice necessary for second degree murder convictions.

■     The task of defining extreme indifference to human life by analysis rather than anecdote is difficult. The language is subject to varying interpretations. *People v. Marcy,* 628 P2d 69, 80 (Colo 1981), construed this language in the Colorado murder statute to mean "acting with the awareness that one's actions are practically certain to cause the death of another * * *."[14] *Napier v. State,* 357 So2d 1001, 1007-09, (Ala Cr App 1977), *rev'd* 357 So2d 1011 (Ala 1978), found depravity, extreme indifference and wanton and willful disregard to be equivalents. Other courts interpreting the language have indicated only that it requires a graver culpability than recklessness alone. *People v. Poplis,* 30 NY2d 85, 88, 330 NYS2d 365, 366, 281 NE2d 167, 168 (1972); *People ex rel Russell v. District Court,* 185 Colo 78, 84, 521 P2d 1254, 1257 (1974). Professor Moreland illustrates the difficulties encountered when attempting to define the language with precision:

"The Model Penal Code suggests the phrase 'committed recklessly under circumstances manifesting extreme indifference to the value of human life.' The word 'recklessly' is unfortunate here for it is the same word used by the Model Code in defining negligence on the manslaughter level, but the phrase 'extreme indifference to the value of human life' is equivalent to the 'depraved mind' and other mental attitude phrases of the common law. The writer, faced with the problem in 1962 of selecting a suitable phrase to describe this attitude of mind in drafting the Kentucky statute on negligent manslaughter in the first degree (the equivalent of common law negligent murder), used the phrase 'wanton disregard of human life and safety.' The phrase 'wanton disregard of human life' is equivalent to the anti-social requirement found in common law negligent murder and current statutes as well.

"The writer feels that the mental attitude of one who is 'wantonly disregardful of' (wantonly indifferent to) human life and safety is satisfactorily understandable, but there are those who claim that the meaning of the word 'wanton' is ambiguous. One of the dictionary phrases used to describe 'wanton' is 'arrogant recklessness.' The word 'arrogant' is a rather strong one, but it hardly affords the connotation

---

[14] The court equates its extreme indifference language with willful and knowing conduct. We do not do so here. In the context of our own statute it seems obvious that if the legislature intended "manifesting extreme indifference to the value of human life" to be the equivalent of "knowingly" it would have prefaced that phrase with "knowingly" instead of "recklessly."

of the attitude required for the negligent murder. It is also unfortunate to use the word 'reckless' with the word 'wanton,' since 'recklessness' is the key word for the negligent homicide on the manslaughter level. If the writer correctly interprets the attitude of the common law, one who commits a negligent homicide has the mental attitude, 'I don't give a damn if I do kill somebody by my extremely dangerous act.' Of course, one cannot put that language into a statute, or hardly into an opinion or rule, but it illustrates the point. * * * Moreland, *A Re-Examination of the Law of Homicide in 1971: The Model Penal Code*, 59 Ky LJ 788, 796-97 (1971). (Footnotes omitted.)

After rejecting "wanton disregard" as a means of defining an attitude of extreme indifference Moreland resolves that the term recklessness should be eliminated from the higher crime and emphasis should be placed on two elements: the commission of

"an *extremely dangerous act* and an indication under all the circumstances of *extreme indifference* to human life and safety. The *circumstances* might include the fact that the actor was driving while drinking heavily, that he was driving at a high speed, that he had run several lights before the accident, and that he was impudent and truculent at the time of the arrest." (Emphasis in original.) Moreland, *supra,* 59 Ky LJ at 810-11.

We agree with those who find the term "wanton" perplexing. That word is subject to interpretations ranging from willful and knowing conduct, *People v, Marcy, supra,* to recklessness, Restatement, Second, Torts § 500, Special Note. We disagree with Moreland, however, that recklessness has no place in the analysis. In our view a defendant must act with the mental state of both recklessness plus the increased element of extreme indifference. Commission of an extremely dangerous act without justification fits well within our statutory definition of recklessness. The commission of a dangerous act is reckless because it entails "substantial and unjustifiable risk" of serious injury or death. ORS 161.085(9).

Defendant admits he was reckless. The question remains whether there also was evidence of circumstances from which the jury could have inferred defendant's

extreme indifference to the value of human life. We find that there was.

We are persuaded by the court's analysis in *Hamilton v. Commonwealth, supra.* In a case of first impression the Kentucky Supreme Court upheld a second degree murder conviction for vehicular homicide. The defendant, while intoxicated, disregarded a red light and proceeded into an intersection where he struck a car and killed the driver. The court observed " 'the defendant's intoxication at the time of the fatal occurrence in question has been considered a significant, if not controlling, factor in upholding the sufficiency of the evidence to sustain a conviction for murder in many vehicular homicide prosecutions.' " (Citing 21 ALR3d 116, 150 (1968)). 560 SW2d at 542. The court distinguished the case from the "typical automobile accident where a driver makes a gross error of judgment and is tried for * * * reckless homicide." *Id.* at 543.

We likewise distinguish the case before us from cases of reckless assault. Witnesses testified that prior to the accident defendant was swerving across the road, tailgating so closely he almost hit the car in front of him and passing on a curve. The overwhelming weight of the evidence indicated that the accident occurred because defendant was across the center line in the oncoming lane of traffic. He sideswiped the first oncoming vehicle, bounced or swerved into his own lane and then swerved back across the center line into the second oncoming vehicle, causing serious injury to the passenger. Defendant had a blood alcohol content of. 24 percent two hours after the accident. He was belligerent at the scene of the accident, threatening to hit the passenger of the first car he sideswiped. Because of his intoxication he was not only unable to assist the victim, but at one point interfered with the assistance. The degree of intoxication, defendant's erratic driving and his conduct at the scene of the accident are circumstances the jury could properly consider in determining whether defendant was extremely indifferent to the value of human life.

We hold that the circumstances which exist in this case suffice to establish defendant's extreme indifference

to the value of human life.[15] From the facts before it the jury in this case could infer, and thus find, such indifference on the part of defendant.

Affirmed.

---

[15] Defendant in this case was also found guilty of driving while suspended. Were he driving with knowledge of suspension, that fact would be another indication of an indifferent state of mind, for it reflects a lack of concern for social and legal responsibility. However, after *State v. Buttrey,* 293 Or 575, 651 P2d 1075 (1982), knowledge of suspension is no longer required. The fact of suspension alone cannot therefore be used to infer a state of mind.