Submitted October 28, 2014, affirmed September 16, petition for review denied December 10, 2015 (358 Or 449)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**SHAUD KENNETH ALEXANDER,**
*Defendant-Appellant.*

Josephine County Circuit Court
10CR0748; A151976

359 P3d 516

Peter Gartlan, Chief Defender, Robin A. Jones, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Jona J. Maukonen, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

GARRETT, J.

## GARRETT, J.

Defendant was convicted of two counts of third-degree assault, ORS 163.165, two counts of recklessly endangering another person, ORS 163.195, and one count each of driving under the influence of intoxicants, ORS 813.010, reckless driving, ORS 811.140, and criminal driving while suspended or revoked, ORS 811.182. On appeal, defendant assigns error to the trial court's denial of his motion for a judgment of acquittal on the two counts of third-degree assault, arguing that the state failed to produce sufficient evidence to support a finding that defendant's conduct manifested "extreme indifference to the value of human life." For the reasons that follow, we affirm.[1]

In reviewing a trial court's denial of a motion for a judgment of acquittal, we state the facts in the light most favorable to the state. *State v. Goddard*, 178 Or App 538, 540, 37 P3d 1046 (2002). Defendant and a friend, Rush, met up with two other men, Magley and Boatman, at Magley's house. The group made plans to go to a tavern. Before leaving, defendant consumed an alcoholic energy drink. Defendant then drove the group to the tavern in his car. The men drank there, and moved on to another tavern, where they continued drinking. At some point, the bartender asked them to leave. Defendant, Rush, and Magley discussed who was going to drive home. The group also discussed taking a taxi. At trial, Rush testified that he asked defendant whether he was "okay to drive" and that Rush volunteered to drive if defendant was not. Defendant told Rush, "no, I'm good, I'm okay." Rush and Magley joined defendant in his car; Boatman got a ride with others.

At first, defendant drove within the speed limit. Later, defendant accelerated and "started turning up the music a little bit." Magley testified that Rush asked defendant to slow down and turn down the radio "two or three times," but, instead, defendant accelerated further. Magley

---

[1] Defendant also argues that, to convict him on any charge, the jury had to unanimously agree. We reject that argument without further discussion. *See State v. Bowen*, 215 Or App 199, 202, 168 P3d 1208 (2007), *adh'd to as modified on recons*, 220 Or App 380, 185 P3d 1129 (2008), *rev den*, 345 Or 415, *cert den*, 558 US 815 (2009).

testified that the car reached an approximate speed of 80 miles per hour. As the car approached a curve, it made contact with some gravel on the shoulder; defendant lost control, and the car became airborne and crashed upside down into a ditch. Magley emerged first and pulled Rush from the car. The two men then attended to defendant, who was injured and still inside the car, while they waited for help to arrive.

Emergency responders removed defendant from the car and strapped him to a backboard. Deputy Sheriff Gasperson testified that defendant was "combative." Another deputy, Freeman, testified that emergency responders had difficulty restraining defendant because he was being "belligerent." Freeman also recalled that, at the hospital, defendant "wasn't being very cooperative" and was "rude." Defendant's blood-alcohol content was measured at 0.219 approximately three hours after the crash.

Defendant testified that he drank heavily that night because he believed that Rush would be driving the group home. Defendant explained that he had been knocked unconscious in the crash and that he woke up "absolutely terrified." Defendant also testified that, before the accident, he had taken a class "related to the hazards of drinking and driving."

A witness, Carver, whose home is across the street from the crash site, was outside his home when the crash occurred. He testified that he heard a car coming that "started speeding up" and "sounded like the guy pushed [the gas pedal] clear to the floor." Carver also testified that most drivers take the curve by his house at approximately 45 miles per hour and that he recalled thinking that defendant's car, which sped by in "a flash[,]" was "not gonna make it" because it "[was] going way too fast."

At the conclusion of the state's case, defendant moved for a judgment of acquittal on the two counts of third-degree assault, arguing that the evidence was insufficient to prove anything more than that he drove recklessly while intoxicated. Defendant further argued that merely driving at an excessive speed does not satisfy the "extreme indifference" element of the third-degree assault statute. The trial

court denied defendant's motion. A jury convicted defendant on all charges.

On appeal, defendant reprises his argument to the trial court. We review the denial of a motion for a judgment of acquittal to determine whether, viewing the evidence in the light most favorable to the state, a jury could have found that the essential elements of the offense were proved beyond a reasonable doubt. *State v. McAtee*, 245 Or App 233, 236, 261 P3d 1284 (2011).

Here, the disputed element of third-degree assault is the existence of "circumstances manifesting extreme indifference to the value of human life."[2] The statute does not define "extreme indifference," but our "case law has made clear that it refers to 'a state of mind where an individual cares little about the risk of death of a human being.'" *State v. Forrester*, 203 Or App 151, 156, 125 P3d 47 (2005) (quoting *State v. Cook,* 163 Or App 578, 583, 989 P2d 474 (1999)). Thus, "the jury must find not only recklessness but also conduct which in addition to recklessness, manifests extreme indifference to the value of human life on the part of this defendant, as may be inferred from his conduct at the time of the event." *State v. Boone*, 294 Or 630, 634, 661 P2d 917 (1983).

Several cases have addressed the "extreme indifference" element in the context of driving while intoxicated, and support the proposition that a jury may find extreme indifference based on a defendant's intoxication combined with other evidence of his or her conduct. In *Boone*, the Supreme Court held that the evidence supported a finding of extreme indifference to the value of human life where the defendant drove his vehicle dangerously by tailgating other cars, swerving, and driving over the center line of a highway, all while intoxicated and having a suspended driver's license. 294 Or at 632-33, 639. The defendant's blood-alcohol level was .24 percent two hours after the accident, he was "belligerent at the scene of the accident," he threatened to

---

[2] ORS 163.165(1)(c) provides that a person commits the crime of third-degree assault if that person "[r]ecklessly causes physical injury to another by means of a deadly or dangerous weapon under circumstances manifesting extreme indifference to the value of human life[.]"

hit the passenger of the first car he struck, and, due to his intoxication, he was "not only unable to assist the victim, but at one point interfered with the assistance" of that victim by others. *Id.*; *see also Forrester*, 203 Or App at 153-56 (evidence was sufficient to establish extreme indifference where the defendant was intoxicated, drove erratically, "repeatedly slammed on his brakes as he reached controlled intersections and then rapidly accelerated away," drove through a red light without slowing down and struck another vehicle, and showed no "concern or remorse for the consequences of his conduct"); *State v. Belcher*, 124 Or App 30, 33, 860 P2d 903 (1993) (evidence that the defendant "drove while intoxicated, ran red lights, hit the victim and failed to stop," was evidence that a jury could consider "when deciding whether defendant's conduct manifested an extreme indifference to the value of human life").

Here, defendant contends that the evidence at trial showed, at most, that he was reckless and inconsiderate. He also argues that, unlike the cases discussed above, there was no evidence presented that he drove erratically, and more significantly, there was no evidence that he engaged in any "repeated acts of recklessness" that would demonstrate that he "subjectively disregarded any risk of harm to others."

We reject defendant's characterization of his conduct. The record establishes that defendant was highly intoxicated (his blood-alcohol level was nearly three times the legal limit) and that, like the defendant in *Forrester*, he was driving at an excessive rate of speed and ignoring traffic conditions (the curve in the road). The evidence that defendant responded to a passenger's concern about his rate of speed by accelerating and turning up the music is suggestive of an indifference to the safety of others. Indeed, unlike any of the cases defendant aims to distinguish, there is evidence that defendant was actually made aware that others viewed his conduct as dangerous, and then chose to ignore those warnings by driving faster. *See State v. Hill*, 298 Or 270, 280, 692 P2d 100 (1984) (explaining that "the attitude [that the accused] displays toward the consequences of his acts" is relevant to a finding of extreme indifference). Defendant was part of the earlier discussion about whether to take a

taxi, which also could reasonably be interpreted as a sign that defendant had considered, and rejected, the indications that he was unfit to drive. (Defendant points out that he did not force anyone else to ride with him, but the relevant question is whether defendant's conduct amounted to extreme indifference, not whether his passengers happened to make wise choices.)

Defendant's admission that he had taken a safety course that, in his words, was "related to the hazards of drinking and driving," further supports the jury's conclusion. We have held that a defendant's prior participation in alcohol safety courses may be considered for the purpose of establishing a defendant's "subjective awareness of the risks" to others. *State v. Johnstone*, 172 Or App 559, 567, 19 P3d 966 (2001). Here, the jury could infer that, in light of the safety course, defendant had a heightened awareness of the risks of driving while intoxicated and then deliberately disregarded those risks.

In sum, because the state produced evidence sufficient to support a finding of extreme indifference to the value of human life, the trial court did not err in denying defendant's motion for a judgment of acquittal.

Affirmed.