Argued and submitted November 25, 2015, reversed May 3, petition for review denied September 14, 2017 (361 Or 886)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**CINTHYA GARCIA-CISNEROS,**
*Defendant-Appellant.*

Washington County Circuit Court
C132470CR; A156387

397 P3d 49

Jesse Merrithew argued the cause for appellant. With him on the brief was Levi Merrithew Horst LLP.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.

**EGAN, J.**

Defendant appeals a judgment of conviction for two counts of failure to perform the duties of a driver toward injured persons. ORS 811.705. On appeal, she assigns error to the trial court's denial of her motion for judgment of acquittal based on the insufficiency of the evidence.[1] Defendant contends that the state failed to introduce sufficient evidence to prove her guilt because it did not introduce evidence that defendant knew of or had reason to know of the accident when she was still at the scene of the accident. We conclude that, based on our construction of ORS 811.705, the trial court erred in denying defendant's motion for judgment of acquittal. Accordingly, we reverse.

"When reviewing a trial court's denial of a motion for a judgment of acquittal, we view the evidence in the light most favorable to the state." *State v. Werner*, 281 Or App 154, 156, 383 P3d 875 (2016), *rev den*, 361 Or 311 (2017). We state the facts consistently with that standard.

Defendant was driving home in her boyfriend's Nissan Pathfinder with her brother and her boyfriend. When defendant was about one block away from her house, defendant's brother urged her to drive through a large pile of leaves on the right side of the road. Defendant drove through the pile of leaves, and felt what she and the other passengers described as a "bump" when the front passenger-side tire hit the leaves. Defendant said that it felt "[l]ike if I went [over] a pothole." Defendant apologized to her boyfriend for hitting something with his car and he responded that "its fine, it's probably just a log or rock." Defendant continued driving down the road, turned right, and turned into her driveway. When defendant and the other passengers got out of the car, defendant's boyfriend and brother glanced at the front right side of the car and tire to see if anything was wrong, but did not notice any damage and went inside defendant's house.

Shortly after arriving home, defendant's brother took his bike to go to his girlfriend's house. On his way,

---

[1] Defendant also assigns error to the trial court's denial of her requested jury instructions and motion in arrest of judgment. We do not address those assignments of error because we reverse based on defendant's motion for judgment of acquittal.

defendant's brother heard a man—Robinson—screaming. He noticed that Robinson was on the phone standing next to the pile of leaves that they had driven through. Defendant's brother saw a little girl on the ground—she was slightly on the curb, not talking, and looked hurt. No police had arrived at the scene yet. Robinson and defendant's brother had a brief interaction, and defendant's brother went back to his house to tell defendant what had happened.

Robinson's two daughters had been raking leaves outside of their house. When Robinson went inside the house to put his camera away, he heard a car that sounded like it was going fast and a "thud." Robinson immediately started to look for his two daughters. He found them in the pile of leaves; one was still breathing, the other was not. Robinson was frantic. He called his wife and 9-1-1, and, before he hung up with the dispatcher, a police officer had arrived at the scene of the accident. One girl was pronounced dead at the scene, the other girl died the next day.

When defendant's brother told defendant that she had hit one or two little girls when she had driven through the pile of leaves, defendant did not believe him at first, then she became hysterical—she started to cry and hyperventilate. Defendant's brother and boyfriend examined the car with a flashlight but did not see any signs of an accident. Defendant's boyfriend drove his car to his house because he did not want defendant to get in trouble.

The next day, the police received a tip from defendant's neighbor—he explained that he had seen a young woman crying and two men examining a Nissan Pathfinder with a flashlight the night before. The police questioned defendant, and she eventually admitted her involvement in the accident. Defendant was charged with two counts of failure to perform duties of a driver. ORS 811.705.

At trial, after the close of the state's case, defendant moved for a judgment of acquittal, arguing that the state had failed to prove that defendant knew that the accident resulted in injury to the victims while she was at the scene of the accident, and that ORS 811.705 does not require a driver to return to the scene of the accident after learning that he or she was involved in an accident. The trial court denied

defendant's motion for judgment of acquittal. The trial court concluded that "it's implicit under these particular facts that the defendant needed to * * * return" to the scene once she learned of the injury to the victims and "remain" there until the duties were performed. The jury convicted defendant of both counts of failure to perform duties of a driver.

On appeal, defendant renews her argument made in the trial court that, the state had failed to introduce sufficient evidence to prove her guilt because it did not introduce evidence that defendant knew of the accident when she was still at the scene of the accident. The state does not dispute defendant's assertion that she did not have the requisite knowledge that she had injured two people while she was at the scene of the accident. Rather, the state contends that the trial court ruled correctly, because "even a driver who is unaware that he or she has been in an accident until after driving away from the accident nonetheless is required to [return and] perform the other duties listed in ORS 811.705(1) as soon as the driver learns that the accident resulted in injuries." Accordingly, to resolve this case, we must discern whether ORS 811.705 requires a driver *to return* to the scene of the accident after learning that he or she was involved in an accident that results in injury or death to another person so that the driver can perform the duties under the statute. That dispute presents a question of statutory construction that we review as a matter of law. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993); *see also State v. Stewart*, 282 Or App 845, 848, 386 P3d 688 (2016), *rev allowed*, 361 Or 311 (2017) ("When a trial court's denial of a defendant's motion for a judgment of acquittal depends on its interpretation of the statute defining the offense, we review the trial court's interpretation for legal error.").

We resolve statutory construction questions through an inquiry into the text, context, and legislative history of the statute. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). When statutory text includes words in common usage, they should be interpreted in accordance with their plain, natural, and ordinary meaning. *PGE*, 317 Or at 611. Further, any previous construction of the statute is relevant to our analysis. *See State v. Bryan*, 221 Or App 455, 459,

190 P3d 470 (2008), *rev den*, 347 Or 290 (2009) ("Prior construction of a statute by this court is always relevant to our analysis of the statute's text.").

We begin with the text of the statute. ORS 811.705 provides:

"(1) A person commits the offense of failure to perform the duties of a driver to injured persons if the person is the driver of any vehicle involved in an accident that results in injury or death to any person and does not do all of the following:

"(a) Immediately stop the vehicle at the scene of the accident or as close thereto as possible. Every stop required under this paragraph shall be made without obstructing traffic more than is necessary.

"(b) Remain at the scene of the accident until the driver has fulfilled all of the requirements under this subsection.

"(c) Give to the other driver or surviving passenger or any person not a passenger who is injured as a result of the accident the name and address of the driver and the registration number of the vehicle that the driver is driving and the name and address of any other occupants of the vehicle.

"(d) Upon request and if available, exhibit and give to the persons injured or to the occupant of or person attending any vehicle damaged the number of any document issued as official evidence of a grant of driving privileges.

"(e) Render to any person injured in the accident reasonable assistance, including the conveying or the making of arrangements for the conveying of such person to a physician, surgeon or hospital for medical or surgical treatment, if it is apparent that such treatment is necessary or if such conveying is requested by any injured person.

"(f) Remain at the scene of an accident until a police officer has arrived and has received the required information, if all persons required to be given information under paragraph (c) of this subsection are killed in the accident or are unconscious or otherwise incapable of receiving the information. The requirement of this paragraph to remain at the scene of an accident until a police officer arrives does not apply to a driver who needs immediate medical care, who needs to leave the scene in order to secure medical care for another person injured in the accident or who needs to

leave the scene in order to report the accident to the authorities, so long as the driver who leaves takes reasonable steps to return to the scene or to contact the nearest police agency.

"(2)(a)  Except as otherwise provided in paragraph (b) of this subsection, the offense described in this section, failure to perform the duties of a driver to injured persons, is a Class C felony and is applicable on any premises open to the public.

"(b)  Failure to perform the duties of a driver to injured persons is a Class B felony if a person suffers serious physical injury as defined in ORS 161.015 or dies as a result of the accident."

Defendant asserts that "before any liability can flow from a driver's failure to perform his or her statutory duties after being in a traffic accident the driver must first *know* he or she was involved in an accident that likely resulted in injuries." (Emphasis added.); *see State v. Corpuz*, 49 Or App 811, 820, 621 P2d 604 (1980) (concluding that "[t]he state need only prove that defendant knew, or prove circumstances from which it can be inferred that he knew, he was involved in an accident which was likely to have resulted in injury or death to another person").

The state contends that, once the driver becomes aware that he or she was involved in an accident, he or she is required *to return* to the scene of the accident and perform *all* of the duties listed in ORS 811.705. The state recognizes that the text of the statute does not explicitly require a person "to return" to the scene of the accident after he or she drives away and later learns that he or she was involved in an accident that was likely to have resulted in injury or death to another person; however, the state argues that a duty to return to the scene of the accident is implicit in the statute. The state contends that, because ORS 811.705 requires the driver to "[i]mmediately stop the vehicle at the scene of the accident *or as close thereto as possible*," the legislature was aware that a driver may not be able to stop at the scene of an accident, but nonetheless intended to require the driver to perform the duties that are required at the scene. The state reasons that the "description of the duties of a driver who is unable to immediately stop at the scene

necessarily contemplates a return to the scene, so that the driver can 'remain' and satisfy the other duties."

Because the statute does not define "immediately stop" or "as close thereto as possible" we consider the plain meaning of those phrases. *Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 295, 337 P3d 768 (2014). Under ORS 811.705(1), subsection (a) requires a driver to "immediately stop at the scene or as close thereto as possible" and subsection (b) requires a driver to "remain" at the scene to fulfill the other listed duties. Those two subparagraphs do not suggest that a driver, who does not know he or she was involved in an accident, is required to return to fulfill the other listed duties. The legislature's use of the words "immediately stop or as close thereto as possible" suggest the opposite—that the duties are imposed only on a driver who knew at the time of the accident that he or she was involved in an accident and thus can "immediately" take action. Additionally, the type of duties listed in the remaining subsections of the statute also support that reading. ORS 811.705(1)(c) - (f). Those duties require rendering assistance and exchanging information, all of which only make sense as required duties if they are performed at the time of the accident.

The statute contains the implicit assumption that a driver will know that the driver has been in an accident at the time of the accident. As a result, it does not contain an implicit requirement that a driver must return to the accident scene upon learning of the accident sometime later. We conclude that a plain reading of the statute's text does not support the construction proffered by the state.

As support for the state's construction, the state also points to other similar statutes that impose different duties on drivers involved in different types of collisions. *See, e.g.*, ORS 811.700 (duties of a driver when an accident results in property damage); ORS 811.710 (duties of a driver when the driver knowingly strikes and injures a domestic animal). The legislature sought to establish duties for drivers in various types of accidents. The state argues that it "would leave an irrational gap in the statutory structure" to relieve drivers of those duties based on a claimed lack of knowledge at the time of the accident. The state may be right in

identifying a statutory gap, but it is not our role to fill that gap for the legislature. We are required to interpret the statute based on the words that the legislature used. We note that, like ORS 811.705, none of the related statutes identified by the state contains an express requirement to return to the scene of an accident nor do those statutes contain that implicit requirement. Each of the related statutes addresses a different type of accident; however, the listed duties can be performed only if the driver knows that injury or damage occurred. Thus, the statutory context does not support the state's interpretation of ORS 811.705.

The Oregon Supreme Court has noted that there is no legislative history that expressly discusses the policy reasons behind the predecessor hit and run statutes.[2] *State v. Martin*, 298 Or 264, 268, 691 P2d 908 (1984). In *Martin*, the Supreme Court identified the general policy served by the "hit and run" statutes as follows:

> "the individual and public interest * * * is to penalize a driver who attempts to escape his financial responsibility for damage or attempts to escape criminal or civil prosecution by fleeing the scene of an accident without giving the required information to the other party."

*Id.* at 268. That policy does not address leaving the scene of an accident when the driver does not know that the driver has caused or was likely to have caused injury or death to another person. Thus, based on the text of the statute and context, we conclude that ORS 811.705 does not require a defendant to return to the scene of the accident after he or she has left the scene and later learns that he or she was involved in an accident that injured or killed another person.

In this case, it is undisputed that defendant did not know that she had hit two people until after she had

---

[2] Although there is no express discussion of the policy behind the statute, defendant points out that the predecessor statutes contained express language requiring a driver involved in an accident to "return" to the scene. *See* OCLA § 115-315 (1931) ("The driver of any vehicle involved in any accident resulting in injury or death to any person immediately shall stop such vehicle at the scene of the accident, or as close thereto as possible, but *forthwith shall return to and in every event shall remain* at the scene until he has fulfilled the requirements of subdivision (c) of this section." (Emphasis added.)). However, in 1953 the legislature removed the "return" to the scene language. *See former* ORS 483.602 (1953), *repealed by* Or Laws 1983, ch 338, § 978.

driven away from the scene of the accident and arrived at her house. Because ORS 811.705 requires a driver to know, or have reason to know, that the driver was in an accident causing injury, the trial court erred in denying defendant's motion for judgment of acquittal.

Reversed.