Argued and submitted June 5, reversed and remanded December 4, 1984

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## CARL OTTO HILL,
*Petitioner on Review.*

(TC 82-973; CA A28735; SC S30515)

692 P2d 100

■

■

John Dittman, Certified Law Student, and Michael J. Rosenbaum, Portland, argued the cause for petitioner on review. Michael J. Rosenbaum filed the petition and brief for petitioner on review.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General.

ROBERTS, J.

■

## ROBERTS, J.

Defendant was convicted of assault in the third degree, driving while under the influence of intoxicants and carrying a concealed weapon. The Court of Appeals affirmed. We allowed review to consider an issue related only to the assault in the third degree conviction. That issue is whether, under ORS 163.165(1)(a) requiring the use of a deadly or dangerous weapon for the commission of an assault in the third degree, an automobile can be a dangerous weapon.

The only facts pertinent to the determination of the question are as follows. While intoxicated and operating his automobile at an excessive rate of speed, defendant went off the road and injured both himself and his passenger. The charge of assault in the third degree resulted from the injury to the passenger. There is no dispute that the passenger sustained serious physical injury. Defendant claims that the legislature could not have intended that a driver of an automobile can be guilty of using the automobile as a dangerous weapon to assault his own passenger.[1]

ORS 163.165(1)(a) provides:

"(1) A person commits the crime of assault in the third degree if he:

"(a) Recklessly causes serious physical injury to another by means of a deadly or dangerous weapon;"

ORS 161.085(9) provides:

"(9) 'Recklessly,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

■ The mental state and the use of a weapon are separate components of the assault statute. The different mental states with which one causes serious physical injury are set out

---

[1] If defendant recklessly caused physical injury to another but without the use of a deadly or dangerous weapon he would be guilty of assault in the fourth degree. ORS 163.160(1)(a).

in the various degrees of the crime of assault. Whether an object is a dangerous or deadly weapon requires an analysis separate from the mental state.

The present statutes set forth four degrees of assault. Assault in the fourth degree is a Class A misdemeanor. The remaining three degrees of assault are felonies of escalating severity. The use of a weapon is one element that enhances the seriousness of the crime. Weapons are defined in the criminal code at ORS 161.015(1) and (2) as follows:

"(1) 'Dangerous weapon' means any instrument, article or substance which under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury.

"(2) 'Deadly weapon' means any instrument, article or substance specifically designed for and presently capable of causing death or serious physical injury."

■ The capability of causing death or serious physical injury is the feature common to both definitions. With a deadly weapon this capability is designed into the "instrument, article or substance." A dangerous weapon, on the other hand, is defined not in terms of its attributes but in terms of its use. An object designed for another purpose may become a weapon if used in a manner rendering it capable of causing death or serious physical injury. The circumstances of its use, rather than design features, convert an object into a dangerous weapon.

■ When use of a deadly weapon is charged, there is no need to consider the circumstances in which the weapon was used if the defendant, with requisite mental state, caused serious physical injury or death by means of the weapon. However, proof of a charge of use of a dangerous weapon requires an examination of the "circumstances in which the [instrument, article or substance] is used."

■ Some objects, by virtue of inherent characteristics and regardless of how they are used, are more readily capable of causing serious injury if misused. Many other objects are unlikely to cause serious harm even if misused. The more readily capable an object is by virtue of inherent characteristics of causing serious injury, the broader the "circumstances" become under which misuse of the object renders it

capable of causing serious physical injury or death. Conversely, objects inherently less likely to cause serious injury can be rendered capable of doing so only in limited and unique circumstances. We do not examine here hypothetical situations involving various "instruments" and varied circumstances to determine when any instrument is so used as to become a dangerous weapon. We are presented with a particular question involving automobiles which was specifically considered by the legislature in the enactment of the assault statutes. We address that question.

The defendant does not dispute that under certain circumstances an automobile could meet the statutory definition of "dangerous weapon." The questions defendant presents are as follows: Can an automobile operated "recklessly" be "an instrument * * * which under the circumstances in which it is used * * * is readily capable of causing death or serious physical injury"? And secondly, can a passenger in a vehicle be assaulted *by means of* that vehicle?

■ Defendant argues that the language "under the circumstances in which it was used" indicates the legislature's intent that an "instrument" such as an automobile may be a dangerous weapon only when it is used intentionally to inflict serious injury or death. The state takes the position that an "instrument" need not be used intentionally as a weapon before it can be a dangerous weapon. We agree with the state as to automobiles.

As originally enacted in 1971, the crime of assault had three degrees. The severity of sanction varied in accordance with the seriousness of injury, the defendant's state of mind and use of a deadly or dangerous weapon.

The proposed language of section 1, containing the least serious level of assault, provided:

"(1) A person commits the crime of assault in the third degree if he:

"* * * * *

"(b) negligently causes physical injury to another by means of a deadly or dangerous weapon."

The state correctly points out that the subcommittee discussion of this section of the Proposed Criminal Code led to

the deletion of "dangerous weapon" from section 1 primarily because of concern by members of the committee with imposing criminal penalties on merely negligent infliction of injuries by means of automobiles.[2]

---

[2] The pertinent parts of the minutes of the subcommittee are as follows:

"Senator Lent thought the language was broad enough so that if he were operating his automobile and failed to maintain a proper lookout and hit someone in a crosswalk, that he would be guilty of Assault in the third degree. Although his automobile would not be a 'deadly' weapon, the way in which it was used it would be a 'dangerous' one. Under the proposed language he felt he would be guilty of a crime as well as liable in a tort action. He wondered if the language went too far.

"Mr. Thornton asked if he felt the operation of a motor vehicle should be excluded.

"Senator Lent was not ready to suggest this but was wondering if the intent was to make simple negligence combined with the use of an automobile, which causes injury to someone, a crime.

"Chairman Carson asked if it were not true that any tangible article, even a paperweight, negligently, could become a dangerous weapon. A paperweight dropped negligently on someone's foot could become Assault in the third degree.

"Senator Burns did not think that automobiles should be excluded. He did not think they should be embraced within the scope of section 1 but thought they certainly should so far as section 2 was concerned because there are occasional cases where people have been prosecuted for running people down with cars.

"Senator Lent referred to section 2 sub (c) and noted it used 'recklessly causes' and he assumed it would cover the kind of conduct in connection with the use of an automobile that now comes under 'guest passenger car' or 'negligent homicide.'

"Mr. Paillette observed that if you now kill somebody with your car when you are driving under the influence you could be charged with negligent homicide; however, if you were driving under the influence now and ran over someone but didn't kill him, there would be no crime. It could be reckless driving but as far as it relates to the victim, there is no crime.

"Senator Burns advised that the MPC [Model Penal Code] speaks to this by striking the word 'dangerous' so that it would read 'negligently causes physical injury to another by means of a deadly weapon' and a car would not come under the definition of a 'deadly weapon.'

"Mr. Paillette noted that under the definition of a 'dangerous weapon' New York specifically includes an automobile by saying 'including a vehicle as that term is defined elsewhere.' Michigan also does this. He noted that in the proposed definition of 'dangerous weapon' a vehicle was not specifically included nor was it intended to leave it out. He thought under the proposed definition that a vehicle under certain circumstances could fit within the definition.

"Senator Burns thought so too, and felt it important not to try to put too many things in the statute but to leave these things to the determination of the court."

Minutes, Criminal Law Revision Commission, Subcommittee No. 2, Preliminary Draft No. 1 of the Proposed Criminal Code, February 20, 1969. The subcommittee then deleted "or dangerous" from the proposed language of section 1.

When the full commission considered Preliminary Draft No. 2 on March 20, 1969, the question was raised again because the "dangerous weapon" language was still present in section 2 (identified then as assault in the second degree).[3]

The proposed language of section 2 provided:

"(1) A person commits the crime of assault in the second degree if he:

"* * * * *

"(c) recklessly causes serious physical injury to another by means of a deadly or dangerous weapon."

After extensive discussion the committee voted to retain the reference to dangerous weapons. The commission discussed vehicles as dangerous weapons and decided that negligent use of a vehicle does not render it a dangerous weapon, but reckless, intentional or knowing use of a vehicle to cause injury could bring a vehicle within the meaning of "dangerous weapon."[4]

---

[3] The assault statutes were amended by Oregon Laws 1977, chapter 297 by adding a new assault in the fourth degree crime and rewording of the other assault statutes. The "dangerous weapon" language is not present in the fourth degree assault language but is retained in the other three assault crimes.

[4] The pertinent parts of the minutes of the full commission are as follows:

"Senator Burns thought the language 'or dangerous' should be deleted in section 2 subsection (3).

"Representative Carson noted that the language 'or dangerous' had been taken out of the first draft of section 1 and the conduct in sections 2 and 3 is reckless or intentional, not negligent. He thought this would get away from Judge Burns' concern about the rear-end accidents.

"* * * * *

"Senator Burns moved the adoption of section 2 as written and Rep. Carson seconded the motion.

"Judge Burns moved to amend Senator Burns' motion so as to remove the words 'or dangerous' from subsection (3) of section 2. Representative Haas seconded Judge Burns' motion.

"Mr. Paillette pointed out that the situation covered by subsection (3) would not be mere negligence or a mere accident; it would involve 'recklessness' where there would be a conscious disregard of an unjustifiable risk that such an injury would occur to someone. The injury, furthermore, would have to be a serious physical injury as that term is defined.

"* * * * *

"Judge Burns remarked that perhaps the motion to amend was badly put because it removes from section 2 not only automobiles but the reckless use of other dangerous weapons as well. Actually, he thought that what he should do,

In sum, the legislative history indicates that reckless use of an automobile could constitute "circumstances * * * in which [the vehicle] is readily capable of causing death or serious physical injury" and thus, could render a vehicle a dangerous weapon. The question remains whether a jury could reasonably find that an automobile as involved in this factual situation was a dangerous weapon. *State v. Anderson*, 242 Or 585, 411 P2d 259 (1966).

■ ■ Defendant contends that his passenger was not injured *by means of* a dangerous weapon. Defendant would distinguish the case of a pedestrian who is run down by a car,

---

with the consent of his second, would be to withdraw the motion to amend and instead move that appropriate commentary be added to reflect that it was not intended that automobiles be 'dangerous weapons' within the meaning of subsection (3) of second degree assault.

"Mr. Paillette then asked if it was the intent to cover automobiles anywhere in assault, except under intentional conduct.

"Judge Burns thought it could come under third degree, under the language, 'intentionally, knowingly or recklessly causes physical injury to another'.

"Mr. Thornton said he took a little different view of the situation. He stated that he sat on the Traffic Safety Commission and in looking at a study made by this Commission he noted that in prosecutions for negligent homicide that less than 3% of the cases ever go to prosecution and are convicted. He felt there should be some tightening up, not only in negligent homicide but in the serious injuring of individuals by reckless conduct.

"Senator Burns was of the opinion that one of the things the Commission must strive for is consistency. It seemed to him that if there was to be a negligent homicide situation, that it would be appropriate, with the definition of 'reck-lessness' which is pretty precise and with the added factor of 'serious physical injury,' to leave the section as it is and not put something in the commentary that as to subsection 2 the Commission meant automobiles and as to subsection (3) it did not. He indicated that he would oppose the motion by Judge Burns.

"Chairman Yturri commented that if it were known now what the penalties were for third and second degree assault, the members might be in a little better position to approach the problem. He thought perhaps it would be best to leave the language 'or dangerous' in subsection (3) of section 2 so that automobiles could come under second degree assault and then let the district attorney determine, as he analyzes the facts in the case, whether he will prosecute under third degree. It would be a lesser included offense, anyway. The decision then would be left to the jury.

"* * * * *

"Judge Burns' motion to amend Senator Burns' motion was defeated. Judge Burns and Representative Haas voted 'aye,' Representative Frost not present."

Minutes, Criminal Law Revision Commission, Preliminary Draft No. 2 of the Proposed Criminal Code, March 20, 1969. Section 2 of the proposed draft was then approved.

where, according to defendant, the car is being used as a weapon, from that of a passenger who is injured while riding in a car. Defendant asserts that one does not "use a car as a weapon against his own passenger." Defendant's apparent distinction is that a weapon is something that must be *directed at* a victim to cause injury. We see no reason to exclude from the dangerous weapon definition a vehicle in which the passengers are injured. If injuries result from the reckless operation of the vehicle, and if the use of the vehicle is such as to render it capable of causing serious injury, then the injuries are caused "by means of" a dangerous weapon. We discern no intent on the part of the legislature to differentiate among victims. The fact that the victim in this case was the passenger in defendant's car makes no difference in determining whether the car became a dangerous weapon as it was used.

Defendant's second assignment of error questions whether the jury was properly instructed. To find one guilty of assault in the third degree the statute requires that the defendant *"recklessly* [caused] serious physical injury to another by means of a deadly or dangerous weapon." (Emphasis supplied.) The trial court gave the following instruction:

"Now, we use the word recklessly. Here's what that means. Recklessly when used with respect to assault or to a circumstance described by a statute defining an offense means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

"Now, if you find that the State proved beyond a reasonable doubt that the defendant was driving a motor vehicle while under the influence of intoxicating liquor, proof of driving while under the influence of intoxicating liquor or together *[sic]* with proof of any other act of negligence may constitute recklessly as I have defined that term to you. Now, it's a question of fact for you to decide whether the defendant was proved recklessly *[sic]* and acted recklessly, and this proof must be beyond a reasonable doubt.

"I have instructed you that this crime of assault involves a reckless state of mind, that is being aware of and consciously disregarding a substantial and unjustifiable risk. Now, if you find that the defendant, due to voluntary intoxication, was

unaware of a substantial and unjustifiable risk of which he would have been aware if he had not consumed intoxicants, then such an awareness would be immaterial. The State would not be required to prove defendant's awareness of that risk.

"There's been some evidence presented to you concerning the use of intoxicants by the defendant. And if you should find that the defendant did in fact use intoxicants, this matter may be considered by you in determining whether the defendant acted recklessly."

Defendant argues that with this instruction the court treated the mental state of recklessness within the meaning of the assault three statute as synonymous with the old common law "gross negligence" standard.[5]

 Prior to the criminal code revision of 1971, gross negligence and recklessness comprised the same mental state for purposes of the automobile guest statute, as well as for criminal liability. *State v. Hodgdon,* 244 Or 219, 416 P2d 647 (1966); *Williamson v. McKenna,* 223 Or 366, 387-88, 354 P2d 56 (1960). Gross negligence could be made out by proof of driving while intoxicated and one or more negligent acts. *State v. Montieth,* 247 Or 43, 417 P2d 1012 (1966). The criminal code now distinguishes between gross, or criminal, negligence and recklessness. An act is criminally negligent when the actor should be, but is not, aware of the risk. An act is reckless when the actor is aware of the risk and consciously disregards it. Proposed Oregon Criminal Code § 11 (1970).

---

[5] The second paragraph of the above quoted instruction was given at the state's request. The state supported its requested instruction with citation to two cases, *State v. Montieth,* 247 Or 43, 417 P2d 1012 (1966) and *State v. Gaylor,* 12 Or App 544, 508 P2d 250 (1973), both involving criminal negligence, not recklessness as currently defined by statute. There is comment by the court to indicate that the court, as well as the state, equated gross negligence with recklessness:

"THE COURT: Well, the reason I did, I equate recklessness to gross negligence, and in gross negligence, and in gross negligence situations, you always instruct the rules of the road and that the jury can conclude a person is guilty of gross negligence if you have a combination of a violation of several of these acts. And I think the same rule applies to recklessness.

"MR. ROSENBAUM: I assume that was the case, Your Honor. But I noticed you also, in another one of my exceptions, gave basically what the statutory definition is on recklessness. ... gross negligence, as an offense under the motor vehicle code, is an entirely separate offense definition than recklessness as defined in the Assault III statute.

"THE COURT: I understand that. But I equate the two. You may have an exception."

We have indicated in *State v. Boone,* 294 Or 630, 661 P2d 917 (1983), that intoxication combined with negligent driving can constitute criminal negligence, recklessness or recklessness under circumstances manifesting extreme indifference to the value of human life, depending on the nature of the accused's erratic driving, the extent of his intoxication and the attitude he displays toward the consequences of his acts. The difference between criminal negligence on the one hand and the two levels of recklessness on the other is defendant's subjective awareness of the risks to which he exposes others.

The second paragraph of the challenged instruction would be appropriate if the mental state required by this statute were gross or criminal negligence. However, assault in the third degree requires the higher mental state of recklessness. This instruction may have led the jury to convict defendant upon a finding of lesser culpability than is required by statute. For this reason the conviction must be reversed and remanded for new trial.