Argued and submitted July 31, reversed and remanded for entry of judgment of convictions for delivery and possession of controlled substance without commercial drug offense enhancements December 24, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NORBERTO LUPERCIO-QUEZADA,
aka Norberto Nunn Lupercioquezada,
aka Orasio Nunnez Quesada,
*Defendant-Appellant.*

Multnomah County Circuit Court
060331536; A133375

198 P3d 973

Neil F. Byl, Deputy Public Defender, argued the cause for appellant. With him on the opening brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services. On the supplemental brief was Neil F. Byl, Deputy Public Defender.

Inge D. Wells, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Carson, Senior Judge.

HASELTON, P. J.

**HASELTON, P. J.**

Defendant was convicted of unlawful delivery of methamphetamine, ORS 475.890(1), and unlawful possession of methamphetamine, ORS 475.894(2); both offenses were charged as commercial drug offenses, ORS 475.900(1)(b). Defendant argues on appeal that, although the evidence was sufficient to convict him on the underlying delivery and possession charges, the court should have granted his motion for judgment of acquittal as to the commercial drug offense enhancements. In a supplemental assignment of error, he makes an unpreserved argument that the trial court erred in admitting into evidence a laboratory report identifying a substance as methamphetamine. We reject that unpreserved argument without discussion. *See, e.g., State v. Motsinger*, 220 Or App 294, 185 P3d 562, *rev den*, 345 Or 95 (2008); *State v. Raney*, 217 Or App 470, 175 P3d 1024, *rev den*, 344 Or 671 (2008). As explained below, we agree that the trial court erred in denying defendant's motion for judgment of acquittal as to the commercial drug offense enhancements. Consequently, we remand the case to the trial court for entry of a judgment of convictions for delivery and possession of a controlled substance, but without the commercial drug offense enhancements.

Because defendant was convicted after a jury trial, we state the facts in the light most favorable to the state. *State v. Johnson*, 342 Or 596, 598, 157 P3d 198 (2007), *cert den*, ____ US ____ , 128 S Ct 906, 169 L Ed 2d 753 (2008). Deputy Timms of the Multnomah County Sheriff's Office arranged for a confidential informant to make a controlled buy of methamphetamine. Timms provided the informant with a telephone number and instructed him to try to arrange a purchase to take place in a Safeway store parking lot. The informant made the arrangement, and Timms drove the informant to the specified location and provided him with cash to make the purchase. Timms observed a maroon Toyota arrive in the parking lot. Four people were in the car; defendant was the driver. Defendant handed something to one of the car's occupants and then went with the other occupants into the Safeway store. The person to whom defendant had handed something approached the informant and exchanged methamphetamine for cash that Timms had given him. The

methamphetamine was packaged in a cellophane baggie. Defendant watched the exchange from within the store. After the informant left with the drugs, defendant and his companions returned to the maroon Toyota and drove away.

Other police officers followed the maroon Toyota to an apartment complex and established surveillance of the complex from a distance. During that surveillance, the maroon Toyota was not in the officers' view; nor did the officers see defendant or any other person who had been in the maroon Toyota enter any apartment in the complex.

Timms then had the confidential informant arrange for another drug deal by calling the same telephone number again. The transaction was set to occur at a small market near the apartment complex. The person on the telephone told the informant that the drugs would be delivered in approximately 10 minutes. One of the officers watching the apartment complex saw one of the individuals who had previously been in the maroon Toyota with defendant leave the complex and walk to the market. Timms then had the informant call the telephone number to change the location of the buy to a different place several blocks further away from the apartment. After that call was made, one of the officers saw another of the individuals who had been with defendant in the maroon Toyota leave the complex and walk to the market, where he spoke with the first individual who had left the complex. Thereafter, the first individual walked toward the new location for the drug buy, while the second individual walked back to the apartment complex.

The first individual was arrested on his way to the new location for the drug buy, and a baggie containing methamphetamine was found in his possession. Shortly thereafter, an officer who had the apartment complex under surveillance noted the maroon Toyota leaving the complex. Defendant was in the front passenger seat. Other officers stopped the maroon Toyota and arrested the occupants. A search of defendant revealed more that $1,700 in cash, which included the bills that had been used in the original controlled buy at the Safeway store. When the car was searched, the cell phone to which the calls arranging the controlled buys were made was found beside the front passenger seat.

Some time after those events occurred, Timms and other officers searched apartment F at the apartment complex that had been under surveillance. Nothing in the record indicates how the officers' attention became focused on apartment F, how the search came about, or who the residents of that apartment were. No evidence was presented that defendant or any of the other individuals who had been in the maroon Toyota at any point during the events described above had any connection to that particular apartment. Nothing in this record indicates that the search of the apartment yielded any evidence that linked defendant or the other occupants of the maroon Toyota to that apartment. The search of the apartment did, however, yield evidence of materials used in drug packaging and paraphernalia used in drug manufacturing.

Defendant moved for judgment of acquittal on the charges, making arguments both as to the underlying offenses and as to the commercial drug offense enhancement factors. The trial court denied the motion. The jury convicted defendant on all charges. As pertinent to this appeal, the jury specifically found, with respect to both the delivery and the possession charges, that (a) defendant was in possession of $300 or more in cash; (b) defendant was in possession of materials being used for packaging of methamphetamine other than the material being used to contain the substance that is the subject of the offense; and (c) defendant was in possession of manufacturing paraphernalia.[1] As to the delivery charge, the jury also found that the delivery was for consideration.

On appeal, defendant argues that the court erred in submitting the commercial drug offense enhancement questions to the jury because the state presented insufficient evidence as a matter of law to prove beyond a reasonable doubt that he was in possession of materials being used for packaging of methamphetamine (other than the material being used to contain the substance that is the subject of the

---

[1] Those factors were sufficient to constitute a commercial drug offense under ORS 475.900(1)(b) (providing that a delivery or possession is a commercial drug offense if it is accompanied by at least three of the 11 enumerated factors).

offense) and that he was in possession of manufacturing paraphernalia. The state responds that there was sufficient evidence from which the jury could draw an inference that defendant was in constructive possession of the items found in apartment F. The state, invoking *State v. Bivins*, 191 Or App 460, 466, 83 P3d 379 (2004), argues that it "may rely on circumstantial evidence and reasonable inferences flowing from that evidence." In particular, the state argues that the evidence that defendant possessed, and was involved in the sale of, the methamphetamine purchased by the informant at the Safeway store, when viewed in combination with the evidence that defendant thereafter drove to the apartment complex, and the evidence that calls made to defendant's cell phone resulted in his companions emerging from the apartment complex to engage in further drug transactions, provides the necessary circumstantial evidence from which the necessary inferences may be drawn that defendant constructively possessed the packaging materials and paraphernalia found in apartment F.

■     We begin by noting that it is undisputed on appeal that the trial court correctly denied the motion for judgment of acquittal as to the basic possession and delivery offenses. That is, sufficient evidence was presented that defendant possessed and delivered methamphetamine. In particular, the evidence that Timms saw defendant hand something off to his companion immediately before the companion sold methamphetamine to the informant, coupled with the evidence that the money paid by the informant for the methamphetamine was later found on defendant along with a substantial amount of other cash, is more than sufficient to create a jury question as to possession and delivery. That evidence also constituted sufficient evidence to create a jury question as to two of the enhancement factors: possession of more than $300 in cash and delivery for consideration. The focus on appeal is solely on the other two of the enhancement factors: Was there sufficient evidence based on items found in apartment F that defendant possessed drug packaging materials and manufacturing paraphernalia?

■     Certainly there was sufficient evidence to tie defendant's drug activities to the maroon Toyota and sufficient evidence to connect the maroon Toyota to the apartment complex. We pause to emphasize what was *not* in evidence in this

case: There was no testimony by any of the officers who had the apartment complex under surveillance that defendant was seen entering or leaving the apartment complex, much less entering or leaving apartment F. Although there was testimony that the two individuals involved in the second controlled buy emerged "from between buildings of the apartment complex," no testimony connected either of those individuals to apartment F, either. No testimony was presented concerning the layout of the apartment complex, the number of apartments (although, because one was lettered F, an assumption might be made that the complex contained at least six apartments), or the proximity of apartment F to the location where the individuals involved in the second controlled buy emerged. No evidence was presented that connected any individual associated with the maroon Toyota with apartment F. And finally, as noted, no evidence was presented as to the circumstances that led the officers involved in the controlled buy and the surveillance to ultimately search apartment F.

It is tempting to speculate, on this record, that the officers *must* have known of a connection between the individual associated with the maroon Toyota with apartment F—after all, they searched apartment F soon after arresting the occupants of the maroon Toyota. The question, though, is not whether such a speculation comes to mind on this evidence, but whether a finder of fact can find on this record, beyond a reasonable doubt, that defendant constructively possessed the items found in apartment F that led to the commercial drug offense enhancements.

■■    The state was required to prove the drug offense enhancement facts beyond a reasonable doubt. *State v. Moore*, 172 Or App 371, 377, 19 P3d 911, *rev den*, 332 Or 250 (2001). In determining whether the state met its burden, we review the evidence *and all reasonable inferences that may be drawn from it* in the light most favorable to the state to determine whether a rational finder of fact could find the requisite facts. *State v. Macnab*, 222 Or App 332, 335, 194 P3d 164 (2008). However, although reasonable inferences may be drawn from circumstantial evidence, we must attempt to draw the line between " 'circumstantial evidence and mere speculation.' " *Id.* (quoting *State v. Vaughn*, 175 Or App 192, 201, 28 P3d 636 (2001)).

" 'The line is drawn by the laws of logic. If there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts.' "

*Bivins*, 191 Or App at 467 (quoting *Tose v. First Pennsylvania Bank, N.A.*, 648 F2d 879, 895 (3d Cir), *cert den*, 454 US 893 (1981)).

Here, ample evidence links defendant to the maroon Toyota and links the maroon Toyota, as well as defendant's companions, to the apartment complex. The question is whether any connection of apartment F—and the evidence found in apartment F—to defendant requires a factfinder to make "too great an inferential leap" or requires "the stacking of inferences to the point of speculation." *Bivens*, 191 Or App at 468 (citations and internal quotation marks omitted).

We conclude that it does. In particular, we conclude that the multiple-residence nature of an apartment complex compels that conclusion under these circumstances. Here, we assume that the circumstantial evidence was sufficient to connect defendant to the maroon Toyota, and the maroon Toyota to the apartment complex. From there, it would not be too great an inferential leap for a factfinder to infer that defendant or one of his companions in the maroon Toyota had some connection with an apartment in that apartment complex. Where the inferential leap becomes too great, however, is when a factfinder is asked to infer that the maroon Toyota was not simply connected to the apartment complex, but to apartment F in the apartment complex.

Inferences must flow from the evidence—we cannot reason backward and assume that, because there is a good reason to speculate that the police must have known of a connection between apartment F and defendant, the evidence supports an inference that defendant possessed or constructively possessed items found in apartment F. We find nothing in this record that would make it more likely than not—much less allow a factfinder to conclude beyond a reasonable doubt—that defendant's connection was to apartment F,

rather than another apartment within the apartment complex.

We therefore conclude that the trial court erred in denying defendant's motion for judgment of acquittal as to the commercial drug offense enhancements.

Reversed and remanded for entry of judgment of convictions for delivery and possession of controlled substance without commercial drug offense enhancements.