Argued and submitted February 18, reversed and remanded on Counts 1 and 2, determination of offense subcategory fact on Count 2 reversed September 8, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SEAN COBY HOARD,
aka Sean Cody Hoard,
*Defendant-Appellant.*

Umatilla County Circuit Court
CF120149; A156083

386 P3d 672

Lynn W. Hampton, Judge.

David Sherbo-Huggins, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jamie Contreras, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum,

Attorney General, Paul L. Smith, Deputy Solicitor General, and Debra C. Maryanov, Assistant Attorney General.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge.

**DEVORE, J.**

This is a criminal appeal involving charges related to an inmate's possession of a debatably sharpened plastic spoon.[1] Defendant challenges a guilty verdict on Count 1 for possession of a weapon by an inmate ("weapon charge"), ORS 166.275, a guilty verdict on Count 2 for supplying contraband ("contraband charge"), ORS 162.185, and a more particular, additional determination that the contraband was a "dangerous weapon" ("dangerous weapon allegation") for purposes of categorization of crime seriousness in sentencing. OAR 213-018-0070.[2]

Taking those issues in reverse order, defendant first argues that the trial court erred in denying his motion for judgment of acquittal ("MJOA") directed at the dangerous-weapon allegation, because the spoon was not actually *used* as a "dangerous weapon." Defendant next argues that the trial court erred in failing to give jury instructions on attempt, as a lesser-included offense on each of the two charges, because, he contends, the jury could have concluded that the spoon was only partially sharpened and, therefore, was merely an attempted weapon. In large part, we agree. We reverse the denial of the MJOA directed to the dangerous-weapon allegation, and we reverse and remand on the weapon and contraband charges.

When we examine the trial court's denial of defendant's MJOA, "we state the facts in the light most favorable to the state." *State v. Massei*, 247 Or App 30, 32, 268 P3d 774 (2011). When we examine the trial court's decision to reject defendant's requested jury instructions, we view the facts in the light most favorable to the giving of defendant's requested instructions. *State v. Zolotoff*, 253 Or App 593, 594, 291 P3d 781 (2012).

---

[1] A jury returned guilty verdicts on both counts charged, and, at sentencing, the court merged the verdicts and entered a judgment of conviction on the first count. Defendant appeals from that judgment of conviction.

[2] Certain offenses have been divided into different "sub-categories" for use with the Oregon Sentencing Guidelines Grid. OAR 213-018-000(1). Supplying contraband is one such crime. "[E]ach sub-category includes a unique set of offense-specific characteristics * * *." *Id*. Under OAR 213-018-0070(2), the crime seriousness level for supplying contraband is six when the contraband is a "dangerous weapon."

Defendant is an inmate at Eastern Oregon Correctional Institution ("EOCI"). One morning, he plugged his ears with toilet paper and later found that he was unable to remove it. Plugged ears caused him discomfort and impaired his hearing. To get help, he scheduled an appointment to see medical staff the next day.

Later that evening, defendant asked Sergeant Vaafusuaga if he could see a nurse because he was unable to remove the toilet paper from his ear. Vaafusuaga saw the paper lodged deep in one of defendant's ears and watched defendant remove the paper from his other ear. Vaafusuaga called the nurse on defendant's behalf, but the nurse informed the sergeant that defendant had an appointment scheduled for the next day. Defendant asked to be taken to a room where he could write, and Vaafusuaga allowed him to go. During the entire time that Vaafusuaga was with defendant, defendant was trying to get the paper out of his ears.

When defendant was out of his cell, Officer Winters found a white plastic spoon with its handle substantially sharpened, in defendant's cell. In the ensuing investigation, none of the officers received any information suggesting that defendant had threatened to use, intended to use, or actually used the spoon as a weapon. Defendant explained to Vaafusuaga and Inspector Holman that he had only used the spoon to try to dig the paper out of his ears but failed. The spoon handle had pushed the paper further into his ears. Defendant said that he was finally able to get the paper out with a ballpoint pen while he was in the writing room.

At trial, Winters described "contraband" at the prison as "anything that is altered from its original state." Winters explained that, in the institution, certain objects were always contraband—firearms, heroin, or cellphones, for example—because there were rules that inmates were not allowed to have them in any context. Other items became contraband when an inmate used that item in a manner different from its intended use. Winters explained that when defendant was done eating with the spoon, and kept the spoon in his cell rather than returning the spoon with his food tray, the spoon became contraband under the prison's rules. Another witness, Holman, read from his "rule

book" a definition of "contraband" as used at the institution, which included "[a]ny article or thing * * * which the inmate is not specifically authorized to obtain or possess or which the inmate alters without authorization."

Winters described the spoon as a "shank" or a prison weapon, and explained that a "shank" is any rigid instrument that has been altered to have a sharp point and a handle. Winters reviewed several photographs of shank-like objects and identified all but one of the items depicted as shanks. Winters considered one of the objects to be the "beginning of a shank" and agreed that it was "a work in progress" that would need to be further sharpened before it would constitute a shank.

Winters testified that he was familiar with the spoons used at OECI and had handled them, and although he agreed that they were flexible, he said, "it does bend, but struck with enough force, I think it would penetrate if it was sharpened." Winters characterized the sharpened spoon as a weapon, and agreed that the barrel of a pen could be used as a weapon to stab someone. Inmates are given spoons as their only eating utensil and are not allowed plastic forks and knives because plastic forks are "already pointed" and "serrated knives, [e]ven if they're plastic, * * * can cut." Holman testified that he did not know whether the tip of the spoon was sharper than a point of a ballpoint pen. Vaafusuaga thought the spoon had more of a point than the pen.

After the state presented its evidence, defendant moved for a judgment of acquittal as to the dangerous-weapon allegation within the more general contraband charge. The parties had agreed to use the statutory definition of "dangerous weapon" found at ORS 161.015(1), which we discuss later. Using that definition, the state conceded that the evidence did not establish any of the three statutory alternatives that define the *use* of a "dangerous weapon." Nonetheless, the state argued that the court should deny the motion because the spoon was capable of causing injury:

"[PROSECUTOR]: Now, as far as it is a dangerous weapon, under the circumstance in which it is *used, attempted to be used or threatened to be used, it was not—he did not threaten anyone with it, he did not attempt to use the item*

*against anybody.* \* \* \* But that item was capable of being used as a weapon, capable of inflicting injury. \* \* \* So the state would ask that the motion for the judgment of acquittal on the subcategory-specific enhancement factor be denied."

(Emphasis added.) Defendant reiterated that, for the spoon to be not just contraband but contraband that is a "dangerous weapon," the circumstances under which the item was *used*, attempted to be *used*, or threatened to be *used*, must have rendered it readily capable of causing death or serious physical injury.

We review a trial court's denial of an MJOA addressed to an allegation of a sentencing fact or circumstance to be proven at trial in order to determine whether, viewing the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the state, a rational trier of fact could have found the existence of the alleged fact or circumstance beyond a reasonable doubt. *See State v. Lupercio-Quezada*, 224 Or App 515, 521-22, 198 P3d 973 (2008) (describing an analogous review of enhancement facts).

The jury found defendant guilty of making, possessing, or supplying contraband, ORS 162.185, and the jury answered an additional question, "yes," determining that the contraband was a "dangerous weapon" for purposes of categorizing crime seriousness for sentencing. In relevant part, ORS 162.185 states:

"(1)  A person commits the crime of supplying contraband if:

"(a)  The person knowingly introduces any contraband into a correctional facility \* \* \*; or

"(b)  Being confined in a correctional facility \* \* \*, the person knowingly *makes*, obtains or possesses any contraband."

(Emphasis added.) "Contraband" is defined to include, among other things, anything that a person confined in a correctional facility is prohibited by statute, rule, or order from possessing and "whose use would endanger the safety or security of such institution or any person therein." ORS

162.135(1)(a)(D). In the indictment, the state had specially pleaded that the contraband was a dangerous weapon. *See* ORS 132.557 (setting out pleading, proof, and special verdict requirements for subcategory facts on which state intends to rely at sentencing). The definition of "dangerous weapon," to which the parties had agreed, ORS 161.015(1), provided:

> "'Dangerous weapon' means any weapon, device, instrument, material or substance which under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury."

The trial court instructed the jury using that definition. Our inquiry, then, is to determine whether the state presented any evidence from which the jury could have found that defendant supplied (or made) contraband that was a dangerous weapon, "applying the same definition" of dangerous weapon to which the parties agreed.[3] *State v. Evilsizer*, 258 Or App 874, 879, 311 P3d 983 (2013).

Defendant argues that, because the definition of "dangerous weapon" focuses on a defendant's "use," and because there was no evidence that defendant used, attempted to use, or threatened to use the spoon in a prohibited manner, defendant was entitled to an MJOA on the dangerous-weapon allegation. In response, the state argues that the spoon was a "dangerous weapon" because it was "readily capable of causing death or physical injury" and that under the statute, something is a "dangerous weapon" based on its potential to cause harm rather than its actual use, attempted use, or threatened use.

In *State v. Hill*, 298 Or 270, 273-74, 692 P2d 100 (1984), the Supreme Court explained that the statutory provisions defining "deadly" and "dangerous" weapons, ORS 161.015(1) and (2), both apply to objects that are capable of causing death or serious physical injury. What distinguishes the two is whether the object is designed for those purposes, or whether it is designed for some other purpose, but is used in a manner that creates the capability. A "deadly weapon"

---

[3] We accept that definition because the parties agreed to it, and the jury was instructed on it. We express no opinion about whether it governs other cases involving contraband.

is an object specifically designed for causing death or serious physical injury, whereas a "dangerous weapon" is an object designed for another purpose, but which becomes a dangerous weapon "if used in a manner rendering it capable of causing death or serious physical injury." *Id.* at 273. In other words, "[t]he circumstances of its use, rather than design features, convert an object into a dangerous weapon." *Id.*; *see also State v. Lopez*, 56 Or App 179, 182, 641 P2d 596 (1982) (statutory definition of a dangerous weapon depends on the circumstances in which the particular instrument is used, focusing on actual use and not necessarily on intended use).

The court in *Hill* recognized that some objects, by virtue of their inherent characteristics, are more readily capable of causing serious physical injury than others if misused, and other objects, because of their characteristics, are "unlikely to cause serious harm even if misused." *Id.* "The more readily capable an object is by virtue of inherent characteristics of causing serious injury, the broader the 'circumstances' become under which misuse of the object renders it capable of causing serious physical injury or death. Conversely, objects inherently less likely to cause serious injury can be rendered capable of doing so only in limited and unique circumstances." *Id.* at 273-74. Thus, even when an object designed for another purpose is readily capable of causing death or serious physical injury because of its inherent characteristics, whether the object is a dangerous weapon still depends on the circumstances of its use.

In *State v. Bell*, 96 Or App 74, 77, 771 P2d 305 (1989), the question of whether cowboy boots were a "dangerous weapon" turned upon "whether, as a matter of fact, the circumstances of [the] defendant's *use* of the boots rendered them a dangerous weapon." (Emphasis added.)

Similarly, in *State v. Reed*, 101 Or App 277, 279, 790 P2d 551 (1990), where the defendant banged the victim's head repeatedly against the concrete, that use meant that "a concrete sidewalk [was] a 'dangerous weapon.'" In *Reed*, we reaffirmed that the definition of "dangerous weapon" in ORS 161.015(1) provides that "'any instrument, article or substance,' no matter how harmless it may appear when used for its customary purposes, becomes a dangerous weapon

when used in a manner that renders it capable of causing serious physical injury." *Id.*

Likewise, we have concluded that, due to their use, a log and a hardwood floor were "dangerous weapons." *State v. Hagstrom*, 242 Or App 127, 130, 255 P3d 516 (2011) (log); *State v. Glazier*, 253 Or App 109, 114, 288 P3d 1007 (2012) (floor).

We reject the state's argument that the only test of whether something is a "dangerous weapon" under ORS 161.015, is that it is "readily capable of causing serious physical injury." Under ORS 161.015(1), a defendant's use—actual use, threatened use, or attempted use—of a thing is a distinct and necessary aspect of something that is a "dangerous weapon." Because the state presented no evidence that defendant used, attempted to use, or threatened to use the altered spoon in a way that was readily capable of causing death or serious physical injury, there was no evidence from which the jury could have found that defendant made or supplied contraband that was a "dangerous weapon" within the meaning of ORS 161.015(1). We conclude, therefore, that the trial court erred in denying defendant's MJOA on the dangerous-weapon allegation.

Defendant does not contend on appeal, and did not preserve at trial, any argument challenging the sufficiency of evidence on the basic contraband charge, involving ordinary contraband defined in ORS 162.135.[4] Accordingly, we do not reach the issue of whether there was evidence to support the more general contraband charge.

That conclusion still leaves for consideration defendant's second through fifth assignments of error, challenging the trial court's refusal to instruct the jury on attempt as a lesser-included offense for each of the two counts. We review such claims for legal error and "view the facts in the light most favorable to defendant to determine whether there was evidence to support the requested instruction." *State v.*

---

[4] ORS 162.135(1)(a)(D) defines contraband as "[a]ny article or thing which a person confined in a correctional facility * * * is prohibited by statute, rule or order from obtaining or possessing, and whose use would endanger the safety or security of such institution or any person therein."

*Taylor*, 207 Or App 649, 666, 142 P3d 1093 (2006), *rev den*, 342 Or 299 (2007). The right to a lesser-included offense instruction requires "'evidence, or an inference which can be drawn from the evidence, which supports the requested instruction so that the jury could rationally and consistently find the defendant guilty of the lesser offense and innocent of the greater.'" *State v. Cunningham*, 320 Or 47, 58, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995) (quoting *State v. Washington*, 273 Or 829, 835-36, 543 P2d 1058 (1975)).

We have already described the contraband charge under ORS 162.185. The weapon charge is based on a prohibition of a "weapon," including a "sharp instrument," under ORS 166.275. That statute provides:

> "Any person committed to any institution who, while under the jurisdiction of any institution or while being conveyed to or from any institution, possesses or carries upon the person, or has under the custody or control of the person any dangerous instrument, *or any weapon including* but not limited to any blackjack, slingshot, billy, sand club, metal knuckles, explosive substance, dirk, dagger, *sharp instrument*, pistol, revolver or other firearm without lawful authority, is guilty of a felony and upon conviction thereof shall be punished by imprisonment in the custody of the Department of Corrections for a term not more than 20 years."

(Emphasis added.) As to that charge, defendant argues that the trial court erred by rejecting his jury instructions on the lesser-included offense of *attempted* possession of a weapon by an inmate. Likewise, defendant argues that the trial court erred by rejecting his jury instructions on the lesser-included offense of attempt to supply contraband.

Defendant would be entitled to the lesser-included instructions on attempt if a rational juror could have found that he took a substantial step toward violating ORS 166.275 or ORS 162.185, yet did not complete the offense. *See* ORS 161.405 (attempt described).[5] Predictably, the parties

---

[5] ORS 161.405 provides, "A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime."

disagree whether the spoon could be an incomplete version of the object proscribed in each charge.

As to the weapon charge, defendant argues that the jury could have rationally found that defendant merely attempted to possess what had not yet become a weapon under ORS 166.275. Defendant notes that Winters testified that a photograph showed an altered object that was a "good beginning" or "a work in progress" but not a completed shank. The spoon, argues defendant, could be found to be similar to that object. Defendant adds that the spoon itself was admitted into evidence. The jury could have examined it and found that its handle was too dull to be a "sharp instrument." Defendant contends that the jury could have concluded that the spoon needed further sharpening or reinforcement for rigidity before it could be a weapon or sharp instrument. The state responds that the spoon was a completed shank. The state argues that, because the spoon handle was ground down, it did not need to be sharper or more rigid to be a "sharp instrument" under ORS 166.275.

As to the contraband charge, defendant argues that the record contained sufficient evidence to support a conviction for only an attempt to make or supply contraband. That is because, to constitute "contraband," the spoon must have been in such condition that its "use would endanger the safety or security or such institution or any person therein." ORS 162.135(1)(a)(D). For purposes of ordinary contraband, the *capability* of being used to endanger sufficed; actual use or threatened use was not required as with a "dangerous weapon." Nevertheless, defendant contends that, because reasonable people could disagree about whether the spoon was capable of posing such a risk, the jury should have been able to decide whether defendant took a substantial step towards possessing contraband. Defendant contends that the spoon needed further sharpening or rigidity before it could endanger the safety of the institution or any person therein.

In *Zolotoff*, 253 Or App at 594, we examined a case in which the defendant, an inmate, had a broken spoon in his cell that "appeared to a certain extent to be sharpened." The defendant was convicted of possession of a weapon by

an inmate, ORS 166.275. He appealed challenging the trial court's refusal to give the jury an instruction for attempted possession of a weapon by an inmate, arguing that, because the spoon was not sharp, the jury could have found that he had attempted to possess a weapon, rather than possessed a completed weapon. *Id.* at 595. We concluded that the trial court erred by failing to instruct the jury on the lesser offense of attempted possession of a weapon by an inmate, because "there was evidence from which a jury could infer that the spoon in defendant's possession was not yet a weapon because he had not completed sharpening it and was merely in the process of making a weapon." *Id.* at 596.

Similarly, here, there was evidence from which the jury could conclude that by narrowing the sides of the handle of the spoon, defendant had taken a substantial step toward possessing a weapon, but, even so, an object that was not yet a weapon. There was evidence—a photograph of an incomplete shank, the spoon itself, testimony about the flexibility of the handle, and Vaafusuaga's testimony about the inefficacy of the handle in digging toilet paper out of defendant's ear—from which a rational jury could conclude that the handle was not yet fully sharpened and not yet a "weapon" or "sharpened instrument" within the meaning of ORS 166.275. Likewise, there was evidence from which a rational jury could conclude that defendant took a substantial step toward making or possessing a prohibited object that endangered the safety or security of the institution or persons at the institution, but that defendant failed to sharpen or reinforce the spoon in such a way that it could endanger the safety or security of the institution within the meaning of ORS 162.135(1)(a)(D). Because there was evidence to support defendant's jury instructions on attempt, we conclude that the trial court erred in failing to give those jury instructions. Defendant was entitled to have had the jury consider an attempt version of each charge.

Reversed and remanded on Counts 1 and 2; determination of offense subcategory fact on Count 2 reversed.