Submitted February 21, 2018, affirmed November 6, 2019

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GEORGE WEST CRAIGEN,
*Defendant-Appellant.*

Umatilla County Circuit Court
CF130538; A161522

454 P3d 7

Defendant, who was an inmate at the Umatilla County Jail, appeals from a judgment of conviction for supplying contraband, ORS 162.185(1)(b), assigning error to the trial court's denial of his motion for a judgment of acquittal. During a random search of defendant's cell and person, a prison guard found a piece of metal, resembling a nail. Because the nail, or shank, was sharpened on one end to a point, the state charged defendant with possessing a "dangerous weapon" as contraband, elevating the crime of supplying contraband from a category four crime, to a category six crime under OAR 213-018-0070. Defendant argues that the state failed to prove the sentence enhancement because there was no evidence that he used or threatened to use the nail as a weapon. *Held*: The trial court did not err. The definition of "dangerous weapon" as used in OAR 213-018-0070 does not require evidence of use or threatened use.

Affirmed.

Russell B. West, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and David O. Ferry, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Adam Holbrook, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Egan, Chief Judge, and Powers, Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

In this criminal case, defendant appeals from a judgment of conviction for supplying contraband, ORS 162.185 (1)(b), assigning error to the trial court's denial of his motion for a judgment of acquittal. The issue in this case is whether a "dangerous weapon," as used in OAR 213-018-0070 for purposes of a sentencing enhancement, requires evidence that defendant used or threatened to use the weapon. The trial court concluded that evidence of use or threatened use of the weapon was not necessary and denied defendant's motion. As explained below, we affirm.

In reviewing a denial of a motion for a judgment of acquittal, we must determine whether, after viewing the facts in the light most favorable to the state, there was sufficient evidence from which a rational factfinder "could have found that the state proved all the essential elements of the offense, including *** sentencing enhancement factors, beyond a reasonable doubt." *State v. Villagomez*, 281 Or App 29, 32, 380 P3d 1130 (2016), *aff'd*, 362 Or 390, 412 P3d 183 (2018) (internal quotation marks omitted).

The relevant facts are few and undisputed. Defendant was an inmate at the Umatilla County Jail. During a search of his cell and person, Deputy Hamby found a piece of metal that resembled a nail or shank tucked into the waistband of defendant's pants. The nail was approximately three and three-quarter inches long and sharpened on one end to a point. Hamby explained that the pointed end of the nail had been "sharpened enough to penetrate human flesh."

Defendant was charged with supplying contraband in a correctional facility under ORS 162.185(1)(b).[1] Specifically, the state charged defendant with possessing a "dangerous weapon," which elevated the offense from a

---

[1]  ORS 162.185 provides, in part:

"(1)  A person commits the crime of supplying contraband if:

"(a)  The person knowingly introduces any contraband into a correctional facility, youth correction facility or state hospital; or

"(b)  Being confined in a correctional facility, youth correction facility or state hospital, the person knowingly makes, obtains or possesses any contraband."

"Crime Category 4" to a "Crime Category 6" under OAR 213-018-0070.

Under ORS 162.185(1)(b), "[a] person commits the crime of supplying contraband if *** [b]eing confined in a correctional facility *** the person knowingly makes, obtains or possesses any contraband." ORS 162.135(1)(a)(D), in turn, defines "contraband," in part, as "[a]ny article or thing which a person confined in a correctional facility *** is prohibited by statute, rule or order from obtaining or possessing, and whose use would endanger the safety or security of such institution or any person therein."

The Criminal Justice Commission (CJC), which promulgated the applicable administrative rule, divided the offense of supplying contraband into different subcategories, where "each sub-category includes a unique set of offense-specific characteristics that represents a different degree of crime seriousness for sentencing purposes." OAR 213-018-0000(1). OAR 213-018-0070 provides:

"(1)  **CRIME CATEGORY 7:** Supplying Contraband shall be ranked at Crime Category 7 if the offender supplied a firearm or firearms as contraband.

"(2)  **CRIME CATEGORY 6:** Supplying Contraband shall be ranked at Crime Category 6 if it cannot be ranked at Crime Category 7 and the offender supplied one or more dangerous weapons (not including firearms) as contraband.

"(3)  **CRIME CATEGORY 5:** Supplying Contraband shall be ranked at Crime Category 5 if it cannot be ranked at either Crime Category 6 or 7 and the offender supplied a controlled substance or substances as contraband.

"(4)  **CRIME CATEGORY 4:** Supplying Contraband shall be ranked at Crime Category 4 if it cannot be ranked at Crime Category 5, 6 or 7."

(Boldface in original.)

At trial, defendant waived his right to a jury and proceeded with a bench trial. During closing arguments, defendant moved for a judgment of acquittal, arguing that the state failed to present sufficient evidence to establish (1) the nail as contraband and (2) the nail as a "dangerous weapon" for purposes of the sentencing enhancement. On

the latter issue, defendant asserted that there was insufficient evidence that he possessed a "dangerous weapon" because there was no evidence that he used or threatened to use the nail as a weapon, which would be required if "dangerous weapon" as used in OAR 213-018-0070 mirrored the definition of "dangerous weapon" in ORS 161.015(1).[2] The trial court denied the motion concluding that, in this context, evidence of use or threatened use was not necessary for defendant to be convicted of possessing a "dangerous weapon."

On appeal, defendant renews his argument regarding the definition of a "dangerous weapon," but does not otherwise challenge his conviction. That is, defendant does not dispute that the nail constituted "contraband" for purposes of ORS 162.185. He instead contends that the trial court erred in denying his motion for judgment of acquittal on the subcategory factor because it did not employ the proper definition of "dangerous weapon." Defendant argues that the statutory definition set forth in ORS 161.015(1) should apply because (1) the administrative rules do not define "dangerous weapon" and (2) "dangerous weapon" is a "well-known term of art in Oregon criminal law" that requires evidence of actual or threatened use. The state remonstrates that the trial court ruled correctly, because the term "dangerous weapon" as used in OAR 213-018-0070 does not require evidence of actual or attempted use. The state contends that, because the CJC did not explicitly reference the definition in ORS 161.015 in its rule, the court should interpret "dangerous weapon" based on its plain meaning. We agree with the state's argument.

In the absence of an interpretation by the promulgating agency that would be entitled to deference under *Don't Waste Oregon Committee v. Energy Facility Siting Council*, 320 Or 132, 881 P2d 119 (1994), we construe an administrative rule by utilizing "the same analytical framework that applies to the construction of statutes." *State v. Hogevoll*, 348

---

[2] ORS 161.015(1) defines "dangerous weapon" as "any weapon, device, instrument, material or substance which under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury."

Or 104, 109, 228 P3d 569 (2010); *see also State v. McFerrin*, 289 Or App 96, 99 n 3, 408 P3d 263 (2017) (applying the familiar principles of statutory construction when interpreting CJC's sentencing guideline rules). Thus, to ascertain the meaning of "dangerous weapon" in OAR 213-018-0070(2), we look to its text, the context of the rule and any related rules, and any legislative history of the rule. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (setting out statutory interpretation framework). Ordinarily, when the legislature or agency does not define a term, we presume that the legislature or agency intended the term to have its plain and ordinary meaning. *See Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296, 337 P3d 768 (2014) (noting that, "if the legislature did not give the term a specialized definition, the dictionary definition reflects the meaning that the legislature would naturally have intended"). If, however, a term has a well-defined legal meaning, or is a term of art, we will generally apply that definition. *Id.*; *see also C.R. v. Gannon*, 281 Or App 1, 6, 381 P3d 869 (2016) ("If a particular term or phrase is a 'term of art' in a specific discipline, we will give the term its specialized meaning within that discipline.").

Here, the CJC did not define the term "dangerous weapon" for purposes of OAR 213-018-0070(2). Because the rule does not define the term "dangerous weapon," we first look to the ordinary meaning "as a key first step" in determining what a particular term means. *Comcast Corp.*, 356 Or at 295 (citing *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (first step in statutory analysis is to consider "plain, natural, and ordinary meaning" of text)).

"Dangerous" and "weapon" have several dictionary meanings. The relevant definition of "dangerous" is "2 : able or likely to inflict injury : causing or threatening harm." *Webster's Third New Int'l Dictionary* 573 (unabridged ed 2002). "Weapon" is defined as "1 : an instrument of offensive or defensive combat : something to fight with : something (as a club, sword, gun, or grenade) used in destroying, defeating, or physically injuring an enemy." *Id.* at 2589. Those definitions, however, do little to resolve whether the term "dangerous weapon" as used in OAR 213-018-0070(2) requires use

or threatened use. It is true that one dictionary definition of "weapon" does encompass "use[ ]," which would appear to support defendant's argument that "dangerous weapon" has a well-defined legal meaning that requires use; however, the text and context in which the term arises suggests a different conclusion. *See State v. Gonzalez-Valenzuela*, 358 Or 451, 461, 365 P3d 116 (2015) ("[A] dictionary definition—although providing some evidence of meaning—should not be relied on to resolve a dispute about plain meaning without critically examining how the definition fits into the context of the statute itself. That context may dictate applying one definition rather than another, if the dictionary contains multiple definitions for a relevant term."). Thus, we turn to the text of the rule in context to ascertain the meaning of "dangerous weapon."

First, the text of OAR 213-018-0070 does not explicitly require evidence that a defendant use, attempt to use, or threaten to use the "dangerous weapon" contraband. The absence of any explicit reference to use is telling. Had the CJC wanted to include a "use" requirement, it certainly could have explicitly done so by using the term "use" just as it did in its other rules. *See, e.g.*, OAR 213-018-0055(1)(a) (classifying first-degree rape as a Crime Category 10 if an offender "used or threatened to use a weapon"); OAR 213-018-0065 (1)(a) (classifying first-degree sodomy as Crime Category 10 if an offender "used or threatened to use a weapon"). Similarly, the CJC could have explicitly cross-referenced the statutory definition in ORS 161.015(1), just as it had done with other statutory definitions. *See, e.g.*, OAR 213-005-0006(2)(c) (cross-referencing definition of methamphetamine as defined in ORS 475.996(1)(a)); OAR 213-008-0002(1)(a)(J) (cross-referencing definition of servicemember as defined in ORS 135.881). Given that context, we would not ordinarily incorporate a statutory definition into an administrative rule where the CJC had not done so on its own accord.

Defendant nevertheless maintains that the term "dangerous weapon" is a term of art with a well-defined legal meaning in Oregon criminal law and therefore should be defined by incorporating the definition found in ORS 161.015(1). ORS 161.015 provides, in part:

"As used in chapter 743, Oregon Laws 1971 [also known as the Oregon Criminal Code of 1971], and ORS 166.635, unless the context requires otherwise:

"(1) 'Dangerous weapon' means any weapon, device, instrument, material or substance which under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury."

Defendant points to several statutes where we have imported the statutory definition in ORS 161.015(1), requiring evidence of "use," in support of his argument that we should apply that definition here.[3] Those statutes, however, explicitly require "use" of the dangerous weapon and therefore do little to inform our interpretation of OAR 213-018-0070(2), which does not have a similar explicit reference to use.

Unlike the offense of supplying contraband, the criminal statutes defendant relies upon unmistakably require "use" of the dangerous weapon. *See, e.g.*, ORS 166.370(1) (defining the crime of possession of a weapon in a public building to include any person who intentionally possesses a firearm or any other instrument "used as a dangerous weapon"); ORS 164.415(1)(b) (defining first-degree robbery to include if a person "[u]ses or attempts to use a dangerous weapon"); ORS 164.225(1)(c) (defining first-degree burglary to include if a person "[u]ses or threatens to use a dangerous weapon"); ORS 166.220(1)(a) (defining unlawful use of a weapon to include attempting "to use unlawfully against another, any dangerous or deadly weapon"); ORS 163.165 (1)(a) (defining third-degree assault to include if a person "causes serious physical injury to another by means of a deadly or dangerous weapon").

---

[3] Defendant also relies on *State v. Hoard*, 280 Or App 721, 386 P3d 672 (2016), in which we addressed a similar issue regarding whether a spoon that had a substantially sharpened handle constituted a "dangerous weapon." In contrast to this case, however, the parties in *Hoard* stipulated to using the definition of "dangerous weapon" defined in ORS 161.015(1). We agreed to apply the statutory definition because of that stipulation and because the jury had been instructed based on that stipulation. Importantly, however, we expressly declined to determine whether the statutory definition governs other cases involving contraband. *Id.* at 727 n 3.

Second, the context of the rule does not support adopting the statutory definition and requiring the state to prove an additional element for the offense of supplying contraband. The subcategories in OAR 213-018-0070 assign a different degree of criminal seriousness based on the type of contraband in an inmate's possession, not the manner in which an inmate used the contraband. The degree of seriousness is classified by the type of contraband. For example, "firearms as contraband" ranks at the highest level, followed by "dangerous weapons (not including firearms) as contraband," and then "a controlled substance or substances as contraband." OAR 213-018-0070(1) - (3). As we read the rule, the terms "firearms," "dangerous weapons," and "controlled substances" are meant to serve as examples of types of contraband.

Incorporating the definition in ORS 161.015(1) into OAR 213-018-0070(2) would limit subcategory six to circumstances in which a weapon was used or threatened to be used. That type of interpretation would effectively relegate potentially dangerous contraband such as a knife to the lowest degree of seriousness if there was no evidence that the inmate used or threatened to use the knife. Such a result would appear to frustrate the purpose of both the statute and the rule.

In sum, the trial court correctly denied defendant's motion for judgment of acquittal because the definition of "dangerous weapon" as used in OAR 213-018-0070 does not require evidence of use or threatened use.

Affirmed.